FRIEND BROTHERS, INC. *vs.* SEABOARD SURETY COMPANY.

Suffolk.   May 4, 1944. — June 30, 1944.

Present: FIELD, C.J., QUA, RONAN, WILKINS, & SPALDING, JJ.

*Workmen's Compensation Act,* Self-insurer. *Insurance,* Reinsurance. *Equity Jurisdiction,* Specific performance. *Words,* "Reinsurance."

A policy of insurance issued by a company authorized to do business in Massachusetts to an employer qualified as a self-insurer under G. L. (Ter. Ed.) c. 152, § 25A, et seq., inserted by St. 1943, c. 529, § 7, to indemnify him against losses incurred by him as such self-insurer in excess of a specified amount would not be contrary to § 54A of c. 152 and would be valid.

A contract between an insurance company and an employer qualified as a self-insurer under G. L. (Ter. Ed.) c. 152, § 25A, et seq., inserted by St. 1943, c. 529, § 7, wherein the company agreed to indemnify him against losses incurred by him as such self-insurer in excess of a specified amount, was a contract of reinsurance.

An employer qualified as a self-insurer under G. L. (Ter. Ed.) c. 152, § 25A, et seq., inserted by St. 1943, c. 529, § 7, was entitled to specific performance of an oral contract with an insurance company whereby it agreed to issue to him a contract of reinsurance to indemnify him against certain losses incurred by him as such self-insurer, where it appeared that he would be unable to purchase similar reinsurance elsewhere.

BILL IN EQUITY, filed in the Superior Court on March 27, 1944.

The suit was heard by *Walsh*, J.

*C. B. Rugg*, (*W. E. Carley & J. J. Phelan, Jr.*, with him,) for the plaintiff.

*A. S. Allen & V. B. Kneeland*, for the defendant, submitted a brief.

*M. M. Goldman & S. B. Horovitz*; *W. M. Brady*; and *J. A. Hines & E. C. Park*, by leave of court, submitted briefs as amici curiae.

SPALDING, J. The plaintiff seeks specific performance of an oral agreement to issue and deliver a policy of insurance. The case was heard on a statement of agreed facts and the judge at the request of counsel reserved and reported the case to this court without decision. See G. L. (Ter. Ed.) c. 214, § 31.

The pertinent facts are these. The plaintiff is an employer subject to the provisions of the workmen's compensation act (G. L. [Ter. Ed.] c. 152, as amended). By § 25A of this act (inserted by St. 1943, c. 529, § 7) the plaintiff must provide workmen's compensation benefits for its employees and is given the option of doing this by securing insurance or by acting as a self-insurer. The plaintiff elected to act as a self-insurer, obtained a license from the department of industrial accidents in accordance with said § 25A, and is now operating under the license. In order to safeguard its position as self-insurer against "excessive or catastrophe losses" and to strengthen its ability to pay compensation benefits to its employees, the plaintiff entered into a contract with the defendant whereby the latter agreed to issue a policy of insurance. In this proposed policy the defendant would reimburse the plaintiff for all losses arising by virtue of its acting as self-insurer from November 15,

1943, to November 15, 1944, to the extent that the amount of such losses exceeded an amount equal to seventy-five per cent of the normal premium that would have been payable by the plaintiff in the event it had purchased a standard workmen's compensation insurance policy to cover the employees to whom it became responsible as a self-insurer, or $6,000, whichever amount was greater.  The defendant, an insurance company incorporated under the laws of New York, was authorized in this Commonwealth to issue and deliver policies of workmen's compensation insurance and other forms of casualty insurance.

The plaintiff, not having received the policy from the defendant in accordance with the agreement, made a written demand for the same.  The defendant replied that, although it was otherwise willing to complete its agreement with the plaintiff, it was prevented from doing so in view of a ruling [1] of the commissioner of insurance declaring that policies of this sort could not be issued in this Commonwealth.

The underlying question for decision is whether an insurance company authorized to do business in this Commonwealth may issue a policy of insurance to an employer, who has qualified as a self-insurer under G. L. (Ter. Ed.) c. 152, as amended by St. 1943, c. 529, to indemnify him against losses over and above a specified amount.  We think that it may.

---

[1] "To Casualty Companies Transacting Insurance in Massachusetts:

.   RULING

ISSUANCE OF STOP LOSS POLICIES PROHIBITED

The Massachusetts Rating and Inspection Bureau, on December 22, 1943, sent to each company, at my request, Circular Letter No. 653 with which was enclosed a copy of the opinion of the Attorney General dated December 15, 1943 relating to the issuance of so-called Stop Loss Coverage under the Massachusetts Workmen's Compensation Act, (G. L. Chapter 152, as specifically amended by Chapter 529, Acts of 1943

In his opinion the Attorney General stated that a Stop Loss policy is void since its issuance is not authorized by the Workmen's Compensation Act.

It is the ruling of this department that no company is authorized or may be authorized to issue Stop Loss Coverage affording protection or indemnity on account of losses in Massachusetts, and therefore the issuance of such coverage is prohibited.

Each company is requested to answer the questions below and to return to me immediately the duplicate copy of this communication.

Very truly yours,

Charles F. J. Harrington
Commissioner of Insurance."

Prior to St. 1943, c. 529, an employer such as the plaintiff had the option of becoming an insured person under c. 152 or not insuring and risking the enlarged common law liability of an uninsured employer. *Alecks's Case,* 301 Mass. 403. Chapter 529, however, brought about an important change in the law; under it an employer such as the plaintiff is compelled to provide for the payment of the compensation provided under c. 152, (1) by insurance with an insurer or (2) by obtaining a license to act as a self-insurer. The statute sets forth in some detail what must be done by the employer to qualify as a self-insurer. Thus, subject to certain exceptions, not here material, set forth in G. L. (Ter. Ed.) c. 152, § 1 (4), as amended by St. 1943, c. 529, § 3, all employees must now be insured by either one of the two methods mentioned above.

The proposed policy is in reality a contract for reinsurance. Such contracts are expressly recognized by our insurance laws. General Laws (Ter. Ed.) c. 175, § 2A, provides that "Contracts of reinsurance shall be deemed contracts of insurance as defined in section two, and authority to make contracts of insurance shall include authority to make contracts of reinsurance covering the same classes of risks . . . . No provision of law relative to the form of insurance policies shall apply to contracts of reinsurance unless made specifically applicable thereto." Reinsurance has been defined as "an agreement to indemnify the assured, partially or altogether, against a risk assumed by . . . [it] in a policy issued to a third party." *Royal Ins. Co.* v. *Vanderbilt Ins. Co.* 102 Tenn. 264, 267. Somewhat similar definitions may be found in the following cases. *People* v. *Graves,* 274 N. Y. 312, 315. *Allemannia Fire Ins. Co.* v. *Firemen's Ins. Co.* 209 U. S. 326, 332. *Goodrich & Hick's Appeal,* 109 Penn. St. 523. *Barnes* v. *Hekla Fire Ins. Co.* 56 Minn. 38, 40. *Stickel* v. *Excess Ins. Co.* 136 Ohio St. 49, 52. See also Bouvier's Law Dictionary, 2861. Essentially it is a contract to indemnify one who has insured a risk. *Boston Ins. Co.* v. *Globe Fire Ins. Co.* 174 Mass. 229, 231. *Allemannia Fire Ins. Co.* v. *Firemen's Ins. Co.* 209 U. S. 326, 332. We do not adopt the view urged in one of the briefs filed in opposition to the

plaintiff, that reinsurance can exist only between two insurance companies. If one is in fact an insurer, as the plaintiff is here, a policy which indemnifies him with respect to the risk he has assumed constitutes reinsurance. Indeed, the very statute under consideration (St. 1943, c. 529) confirms this conclusion. In § 7 is the following provision: "As a further guarantee of a self-insurer's ability to pay the benefits provided for by this chapter to injured employees, the department may require that a self-insurer *reinsure* [1] his compensation risk against catastrophe, and such reinsurance, when so required, shall be placed only with an insurance company admitted to do business in this commonwealth."

Section 7 recognizes that reinsurance may be desirable as a further guaranty of the self-insurer's ability to pay the benefits provided for by the act and empowers the department to require reinsurance against "catastrophe." We see no reason why a self-insurer may not also voluntarily strengthen his ability to meet excessive or "catastrophe" losses by reinsurance as the plaintiff seeks to do. By so doing both the employer and the employees are benefited; the employer's financial position thereby becomes more secure and the likelihood that the employees will receive compensation under the act is correspondingly increased. Such a policy as that under consideration we think may be issued unless expressly prohibited by our laws.

It has been earnestly argued that the proposed policy is void [2] by reason of § 54A of G. L. (Ter. Ed.) c. 152 (inserted by St. 1935, c. 425), the material portion of which reads as follows: "Every contract or agreement the purpose of which is to insure an employer in whole or in part against liability on account of injury or death of an employee, other than a domestic servant or a farm laborer, shall be void unless it also insures the payment of the compensation provided for by this chapter. Nothing in this section shall affect any such contract or agreement made with an employer of

---

[1] Italics ours.
[2] The Attorney General in the opinion referred to in the ruling of the commissioner of insurance took this view.

less than six persons." In *Alecks's Case*, 301 Mass. 403, it was said at page 406, "The reasons for the enactment of § 54A are plain. Since becoming an 'insured person' under the workmen's compensation act is optional, certain large employers were willing to risk the somewhat enlarged common law liability of a noninsured employer (G. L. [Ter. Ed.] c. 152, §§ 66, 67) in order to avoid paying premiums for insurance under the act. Their willingness to do so would be increased if they could obtain at smaller expense liability insurance protecting them against the payment of damages in actions at law brought by injured employees. Thus the pressure which was intended to drive all employers into insuring under the workmen's compensation act would be removed, and the public policy of the Commonwealth that all employers should come under that act would fail. . . . To avoid that result, § 54A sought to invalidate the liability insurance which tended to make employers feel that they could safely remain outside the workmen's compensation act." Obviously, the reasons that called for the enactment of § 54A have no application to one such as the plaintiff whose employees are now insured. The prohibition there against insuring "against liability on account of injury or death of an employee" unquestionably referred to the employer's common law liability. In construing a statute "The abuses which the statute aims to correct . . . and the purpose sought to be accomplished are to be considered." *Tilton* v. *Haverhill*, 311 Mass. 572, 577. We do not believe that this statute, which, as pointed out in *Alecks's Case*, *supra*, was for the purpose of compelling employers to insure under the act, was intended, after they had insured their employees by becoming self-insurers, to make it difficult for them to do so by denying them the right to reinsure. Such a construction would impute to the Legislature an intent to discourage self-insurance and to weaken the financial strength of the self-insurer who seeks by reinsurance to increase it for the benefit of himself and his employees. Where a statute such as St. 1943, c. 529, makes it compulsory for one to insure his employees and gives him the choice of either insuring with an insurer or acting as a

self-insurer, it would take clear and unequivocal language to convince us that one of these methods was to be regarded with less favor than the other. Such language is not to be found either in c. 529 or in § 54A.

We have dealt with the principal questions argued; those not discussed have been considered.

Since the contract for the proposed policy is not offensive to our laws or public policy it may be enforced. Oral contracts to insure or to issue a policy have been upheld in this Commonwealth. *Shumway* v. *Home Fire & Marine Ins. Co.* 301 Mass. 391. *Sanford* v. *Orient Ins. Co.* 174 Mass. 416. *Emery* v. *Boston Marine Ins. Co.* 138 Mass. 398, 409. *Sanborn* v. *Fireman's Ins. Co.* 16 Gray, 448.

The agreed facts state that the plaintiff is unable to purchase similar insurance if the defendant does not perform its agreement. "It may be taken to be settled in this Commonwealth that the question whether a contract will or will not be specifically enforced depends upon the question whether the thing contracted for can be purchased by the plaintiff, and whether damages are an adequate compensation for a breach." *Butterick Publishing Co.* v. *Fisher,* 203 Mass. 122, 130. See also *Sanford* v. *Boston Edison Co., ante,* 631. Specific performance of contracts to insure has been compelled. *Tayloe* v. *Merchants' Fire Ins. Co.* 9 How. 390, 405. *Magna Manuf. Co. Inc.* v. *Aetna Casualty & Surety Co.* 129 N. J. Eq. 142, 151. *Gerrish* v. *German Ins. Co.* 55 N. H. 355, 358. *Baile* v. *St. Joseph Fire & Marine Ins. Co.* 73 Mo. 371, 384. Williston on Contracts (Rev. ed.) § 1421. *Union Central Life Ins. Co.* v. *Phillips,* 102 Fed. 19, 24, 25. We think, in the circumstances here existing, the plaintiff is entitled to have the contract specifically enforced, and a decree to that effect may be entered.

*So ordered.*