**In re KENDALL GROVE JOINT VENTURE, a Florida General Partnership made up of Micar Development Corp., a Florida corp., and Tasco Properties, N.V., a Netherlands Antilles corp., Debtor.**

**Bankruptcy No. 84–01757–BKC–TCB.**

United States Bankruptcy Court, S.D. Florida.

Jan. 25, 1985.

Jay D. Schwartz, Cohen, Brown, Reed, Ivans & Schwartz, Miami, Fla., for Martinez-Esteve.

Bassil Battah, President, Kendall Grove Joint Venture, etc., debtor.

Frank R.S. Fabre, Coral Gables, Fla., for debtor.

Robert G. Hewitt, Harper & Hewitt, Miami, Fla., for petitioning creditor.

**ORDER WITH RESPECT TO CLAIM OF VENDEE**

THOMAS C. BRITTON, Bankruptcy Judge.

One month before an involuntary bankruptcy petition was filed against this debt-

or, a real estate developer, the debtor's vendee, Martinez-Esteve, obtained a State court judgment for specific performance of the debtor's contract to sell to him certain vacant real property. After an order for relief was entered against the debtor, it converted this case to chapter 11. It has also elected to reject this contract, which with court approval it may do under 11 U.S.C. § 365(a) if this contract remains "executory".

In § 1107(a), a chapter 11 debtor is given all the rights, powers and duties of a trustee. Therefore, the option provided by § 365(a) is available to this debtor.

Section 365(i) restricts the option to reject a contract to sell real property "under which the purchaser is in possession", but that restriction is not pertinent here because the purchaser is not in possession.

The parties agree that the issue is whether a contract to sell real property remains "executory" for the purposes of § 365(a) after the vendee has obtained a decree for specific performance, but before that decree has been enforced and implemented to the point where title has passed.

There appear to be no reported decisions directly in point. Unfortunately also, the statute offers no guidance. As is stated in *In re Jolly*, 574 F.2d 349, 350 (6th Cir. 1978), *cert. denied*, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978):

"As many courts and commentators have pointed out, the phrase is meaningless; once a contract ceases being executory, for all practical purposes, it ceases to exist."

However, I do find the analysis in *In re Jolly*, most helpful, although the facts in that case make the holding inapposite here. The debtor in that pre-Code Chapter XIII case had a contract to buy four burial spaces in a cemetery. Before bankruptcy, he had defaulted and a money judgment for damages had been entered upon the breach. The court reversed the decisions below and held that the contract was not executory.

The court said:

"The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act ...

Thus, executory contracts involve obligations which continue into the future.... They include leases, employment contracts and agreements to buy or sell in the future. Generally, they are agreements which include an obligation for the debtor to do something in the future. In this case there is no obligation for the debtor to do anything in the future. His duty was in the past, he has breached that duty, and had judgment entered against him for that breach ...

The fact that part of the purpose of rejection is to reduce the burden on the estate does not change this result. All debts and obligations are burdens on the estate ... The only obligations Congress allows debtors to reject are executory ones, and only at the cost of any damages rejection may cause.

Essentially, what the trustee wants to do here is ignore the fact that there has already been a breach and judgment as to damages on that breach, and start all over with a new breach and new determination of damages. *This striking departure from the rules of res judicata is neither expressly permitted under the Bankruptcy Act nor reasonably inferred from its purposes.*" *Id.* at 351–52. (Emphasis supplied.)

There is no indication in the present Bankruptcy Reform Act itself or its legislative history that the foregoing analysis involving the former Act is not equally applicable to the present Code.

In our case, the debtor's only future obligation upon the contract at issue here is a ministerial one, the delivery of title in accordance with the decree of the State court. Indeed, under an applicable court rule, the

clerk of the State court will issue title to the vendee if the debtor/vendor fails to comply with the court decree. The only apparent purpose in rejecting this contract is to start all over with a new breach and a new determination of the remedy, presumably in the hope that the debtor can obtain a different ruling here and retain the real property in return for allowing the vendee a money claim for damages to be paid in the future through a chapter 11 plan for the sale and development of the real property in question.

I find and hold that the contract in question here is not executory and, therefore, authorization for its rejection under § 365(a) is denied.

Before bankruptcy, the debtor had appealed the State court decision for specific performance. It is certainly free to pursue its contention there. The debtor's vendee, Martinez-Esteve, has moved for stay relief under § 362(d) in order to enforce and defend the State court judgment for specific performance. (C.P. No. 23.) That motion was also heard on January 10. It is granted and both parties are authorized to proceed with that litigation both in the appellate and in the trial court.

The debtor has not obtained a supersedeas order from the State trial court. The vendee is authorized to seek enforcement in the State trial court of its specific performance decree until and unless the debtor obtains a supersedeas from the State court.