**In re ROXSE HOMES, INC., Debtor.**

**Bankruptcy No. 87–10080.**

United States Bankruptcy Court,
D. Massachusetts.

June 3, 1987.

Robert M. Cohen, Stephen J. Kuzma, Paul Moore, Boston, Mass., for debtor.

Marvin H. Lerman, U.S. Dept. of HUD, Martha Sosman, Asst. U.S. Atty., Boston, Mass., for HUD.

Robert L. Bowens, Daniel S. Manning, Boston, Mass., for Roxse tenants.

Francis J. Lawler, Boston, Mass., for Roxse Limited Partnership.

Charles P. Gamer, Paul Schapiro, Boston, Mass., for Boston Redevelopment Authority.

## MEMORANDUM ON MOTION OF ROXSE HOMES LIMITED PARTNERSHIP FOR RELIEF FROM AUTOMATIC STAY

CAROL J. KENNER, Bankruptcy Judge.

Roxse Homes Limited Partnership (the "Partnership") filed a Motion for Relief from Automatic Stay on March 27, 1987. Roxse Homes, Inc. (the "Debtor"), which is a non-profit Massachusetts corporation, filed an opposition and the issues were extensively briefed. Hearings were held April 16, 1987 and May 4, 1987.

### FACTS AND PROCEDURAL BACKGROUND

The Debtor's sole asset consists of a 364–unit subsidized apartment complex in Boston (the "Property"). The United States Department of Housing and Urban Development ("HUD") holds a first mortgage on the Property and that mortgage is in default.

The Partnership is a Massachusetts limited partnership organized for the purpose of purchasing the Property from the Debtor.

In February, 1984, the Partnership and the Debtor executed an Agreement for Purchase and Sale of Real Estate, pursuant to which the Debtor agreed to sell the Property to the Partnership for $13.7 million. The parties applied to HUD for approval of the sale by the means of an "Application for Approval of Transfer of Physical Assets" ("TPA").

In December, 1984, HUD granted preliminary approval of the TPA application.

In October, 1985, the Partnership commenced suit in the Massachusetts Superior Court against the Debtor seeking specific performance of the Purchase and Sale

Agreement. The Partnership served on the Debtor the "First Request of the Plaintiff for the Production of Documents" in November, 1985. According to the Partnership, the Debtor failed to produce the requested documents, which included records relating to an escrow fund. The escrow fund was among the assets to be transferred under the Purchase and Sale Agreement.

On April 4, 1986, the Superior Court entered an Order directing that a judgment be entered on the Partnership's complaint for specific performance unless, inter alia, the Debtor turned over records of the escrow fund within seven (7) days of the receipt of that Order.

The Partnership maintains that it did not receive the requested records on or before April 14, 1986. On April 16, 1986, the Partnership filed a Motion for Final Judgment which, based on the prior Order and Affidavit of Counsel that the documents had not been produced, sought the entry of final judgment. Also on April 16, 1986, the Debtor filed a Supplemental Response and annexed copies of certain checks, one of which represented a withdrawal from the escrow account of $824,293.81.[1] The Superior Court held a hearing on the Partnership's Motion for Final Judgment on May 14, 1986 and rendered its Order on the Motion for Entry of Final Judgment, wherein the Court, after noting that a finding of blatant obstructionism was warranted, stated that the documents produced were both incomplete and altered and thus violated the Superior Court's April 4, 1986 Order. It then entered a final judgment on May 15, 1986 directing specific performance as a discovery sanction.

The judgment provided that if the Debtor failed to execute and deliver a deed within ten (10) days, the Superior Court would appoint a Special Master to do so.

Appeals were taken by various parties[2] to the single Justice of the Appeals Court, who ordered an expedited appeal by a panel. The single Justice also ordered a stay of the Judgment and designated the Debtor as the party with whom the project manager was to work pending the appeal.

The Massachusetts Supreme Judicial Court then ordered direct appellate review. Oral argument was held in November, 1986.

On January 20, 1987, the Debtor filed its Chapter 11 petition.

On March 11, 1987, the Supreme Judicial Court affirmed the judgment for specific performance in favor of the Partnership. (Apparently, neither the Debtor nor the Partnership informed the Supreme Judicial Court that the Debtor had filed a Chapter 11 petition). Subsequently, the Debtor filed a Motion for Reconsideration, which the Supreme Judicial Court denied.

## RULINGS OF LAW

The Partnership seeks relief from the automatic stay to permit it to enforce its state court judgment for specific performance. In other words, the Partnership seeks to compel the Debtor to execute and deliver a deed to the Property or, if the Debtor fails to perform, for a Special Master to perform in the Debtor's stead.

Under section 362 of the Bankruptcy Code, on request of a party in interest, after notice and a hearing, the Court shall grant relief from the stay

   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

---

1. The Partnership asserts that the Debtor deleted certain information from the cancelled checks it produced. The Debtor states that certain information was concealed in order to prevent further seizures of the escrow funds by taxing authorities. The Partnership also asserts that certain other records were not produced and that the Partnership and the Superior Court were unable to ascertain the status of the escrow fund.

2. On May 28, 1986, the Boston Redevelopment Authority brought an action in the Superior Court to enjoin the transfer of the Property. The Superior Court declined to enjoin the transfer but did enjoin the Partnership from various actions with respect to the Property after it takes title. The Roxbury-South End Tenants Council, Inc. and two individual tenants had sought to intervene in the main State Court case after judgment had entered, but their motion was denied. The involvement of these parties in the state court action is not relevant to this Court's decision.

(2) with respect to a stay of an act against property ..., if

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (1987).

The Partnership argues that it has both equitable ownership (as a result of HUD's preliminary approval of the TPA) and the right to legal title to the Property. The Debtor argues that the Partnership breached the Purchase and Sale Agreement in 1985 and thus terminated that agreement. Even if the Purchase and Sale Agreement were not deemed to be terminated, the Partnership has at best contract rights, stemming from the Purchase and Sale Agreement, and the judgment of the Superior Court entitled the Partnership only to a money claim against the Debtor's estate. In essence, therefore, the Debtor argues that the Partnership is not entitled to relief under section 362(d) because it lacks an interest in the Property.

The parties do not dispute the *facts* involved in the issue of whether and to what extent the Partnership has an interest in the property. On the other hand, the legal issues are many and complex, and the stakes are high as a decision in favor of the Partnership would effectively moot this Chapter 11 proceeding. The Court notes, preliminarily, that the case law is unsettled with respect to many of the central issues raised (e.g., the reach of the automatic stay and the issue of whether the definition of "claim" includes a Massachusetts state court judgment for specific performance). The briefs and oral presentations of both parties were excellent and of great assistance to the Court.

## THE EFFECT OF THE AUTOMATIC STAY ON THE DECISION OF THE SUPREME JUDICIAL COURT

Under 11 U.S.C. § 362(a), a petition filed under the Code operates as a stay, applicable to all entities of

(1) The commencement or continuation, including the issuance or employment of process, of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...;

(2) The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate....

11 U.S.C. § 362(a)(1), (2), (3).

The Supreme Judicial Court heard arguments in the Debtor's appeal of the Superior Court judgment on November 3, 1986. The Debtor filed its petition in this Court on January 20, 1987. The Supreme Judicial Court issued its decision, affirming the Superior Court, on March 11, 1987.

In essence, the Partnership sets forth two arguments as to why this Court should not consider the Supreme Judicial Court's decision to have been subject to the automatic stay.

The Partnership's first argument is that the stay under section 362(a) applies to all entities, and the Code's definition of "entity", 11 U.S.C. § 101(14), does not include courts. Thus, if a matter is completely in the hands of a court and the litigants need take no further action, the intervening filing of a petition by one of the litigants should not stay the issuance of that court's decision.

Most significant to this Court, however, is the plain language of section 362(a) which includes within the reach of the stay "the ... continuation ... of a judicial ... action or proceeding against the debtor that was ... commenced before the commencement" of the bankruptcy. 11 U.S.C. § 362(a)(1). Analysis of a statute "must begin with the language of the statute itself ... and absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." (Citations deleted). *Bread Political Action Committee v. Federal Election Commission*, 455 U.S. 577, 580, 102

S.Ct. 1235, 1237–1238, 71 L.Ed.2d 432 (1982); *In re Co Petro Marketing Group, Inc.*, 680 F.2d 566, 570 (9th Cir.1982).

The Partnership's second argument is that, even if this Court determines that the stay should have applied to the Supreme Judicial Court's decision, that decision can be recognized retroactively, i.e., the stay may be "annulled." The Partnership notes that section 362(d), concerning motions for relief from stay, provides that relief ordered by the court may be "by terminating, *annulling*, modifying or conditioning such stay". 11 U.S.C. § 362(d) (emphasis supplied).

The Partnership argues that such nunc pro tunc relief from the stay is particularly appropriate in this case due to the Debtor's decision not to give the Supreme Judicial Court notice of the filing of the bankruptcy petition, either when it filed its petition or when it filed its Motion for Reconsideration.

The Debtor has cited decisions from a number of circuits recognizing that the automatic stay applies to appellate proceedings. *See, e.g., Ostano Commerzanstalt v. Telewide Systems, Inc.*, 790 F.2d 206 (2d Cir.1986); *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir.1983), *cert. denied*, — U.S. ——, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986); *Ellison v. Northeast Engineering Co.*, 707 F.2d 1310 (11th Cir. 1983); *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 448 (3rd Cir.1982). In *Ellison*, a bankruptcy petition was filed by one party after the parties had briefed and argued a case before the Eleventh Circuit. 707 F.2d at 1311. The Eleventh Circuit found that its proceedings were stayed under section 362. *Id.*

■ The importance of the reach of the automatic stay is dramatically illustrated in this case, where the property at issue in the Supreme Judicial Court decision is the Debtor's only asset. At the same time, the Court recognizes the delicate issues of comity between the state and federal courts. As the Debtor states, no knowing violation of the stay is alleged. Apparently, both the Partnership and the Debtor made tactical decisions not to inform the Supreme Judicial Court of the pending bankruptcy.

Like the Third Circuit in *Association of St. Croix Condominium Owners*, 682 F.2d 446 (3rd Cir.1982), however, this Court is persuaded by the language of section 362, the legislature history of the section, and considerations of the policies behind the Code, to find that the Supreme Judicial Court decision must be considered to be null and void. The Third Circuit cited the following passages from the House Report accompanying the Bankruptcy Reform Act of 1978:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.... It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan....
>
> ....
>
> Subsection (a) defines the scope of the automatic stay, by listing the acts that are stayed by the commencement of the case.... The scope of [§ 362(a)(1)] is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296–6297, *reprinted in* Collier on Bankruptcy, App. Vol. 2, at II–340 (15th ed. 1987).

The Third Circuit concluded that "[b]ecause it is the bankruptcy judge who is the most knowledgeable about the debtor's affairs, and about the effect that any judicial proceeding would have on the debtor's reorganization, it is essential that he make the determination as to whether an action against the debtor may proceed ..." 652 F.2d at 448.

The interpretation of the automatic stay provision which the Partnership asks this Court to adopt (*i.e.* that cases fully briefed and argued before appellate courts are out-

side the protection which section 362 provides) would create an unworkable rule, result in uncertainty in commercial affairs and undermine the effectiveness of the most important protection afforded to debtors by the Bankruptcy Court.

Theoretically, if the stay did not reach decisions to be issued in "action[s] or proceeding[s]" under advisement, judgments against a debtor could be issued in courts all over the country, and the primary purpose of the stay—"to protect the [debtor's estate] from the chaos and the wasteful depletion resulting from multifold, uncoordinated and possibly conflicting litigation," *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y.1981)—could be nullified. Finally, it is settled law in this circuit that actions in violation of the automatic stay are void, not voidable. *In re Smith Corset Shops, Inc.*, 696 F.2d 971, 976 (1st Cir. 1982); *see also In re Corporacion de Servicios Medicos Hosp.*, 60 B.R. 920, 930 (D.P.R.1986), *aff'd*, 805 F.2d 440 (1st Cir. 1986).

■ In addition, the Court concludes that the Debtor's failure to file a suggestion of bankruptcy in the Supreme Judicial Court does not warrant retroactive relief from stay. *Cf. In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984).

### THE STATUS OF THE PURCHASE AND SALE AGREEMENT UNDER SECTION 365

Given that the March 11 decision of the Supreme Judicial Court is void, the remaining question is whether the Court should allow the Partnership relief from stay to seek a remedy in the State Court. The Debtor's arguments suggest that this Court should either (1) look behind the Superior Court judgment to the original dispute and find that the Purchase and Sale Agreement is an executory contract the Debtor may reject under 11 U.S.C. § 365; or (2) determine that the Superior Court judgment, recorded by the Partnership on the date of its issuance, now subject to a pending appeal, is a "claim" under section 101(4)(B) of the Code.

Subject to court approval (and to exceptions not relevant here), a debtor-in-possession may reject any executory contract. 11 U.S.C. § 365(a). The rejection of an executory contract "constitutes a breach of such contract ... (1) ... immediately before the date of the filing of the petition...." 11 U.S.C. § 365(g)(1).

The Debtor cites *In re Alexander*, 670 F.2d 885 (9th Cir.1982) and *In re Aslan*, 65 B.R. 826, 15 B.C.D. 136 (C.D.Cal.1986) for the proposition that where, in a contract for the sale of real estate, the buyer has yet to pay the purchase price, and the seller has yet to convey title, the contract remains executory. The Debtor argues that no event occurred pre-petition which would "execute" the Purchase and Sale Agreement; that the Superior Court did not find that the Debtor breached the Purchase and Sale Agreement; that the judgment rendered in favor of the Partnership was not self-executing because it required that the Superior Court appoint a Special Master to deliver a deed if the Debtor refused to do so—an event which did not occur pre-petition; and that, under the "Countryman test" of what is an executory contract, the Debtor's remaining obligations under the Purchase and Sale Agreement are "material", in part because the agreement requires the Debtor to deliver a $1.7 million escrow fund, a fund which the parties concede no longer exists.

The Partnership asserts that the fact of its judgment for specific performance requires a determination that the contract is non-executory and that the Debtor's remaining obligations, if any, are ministerial.

As the courts have noted, Congress did not expressly define what is an "executory" contract within the meaning of section 365. See, e.g., *In re Kendall Grove Joint Venture*, 46 B.R. 531, 532 (Bankr.S. D.Fla.1985), *aff'd*, 59 B.R. 407 (S.D.Fla. 1986); *Matter of KMMCO, Inc.*, 40 B.R. 976, 977 n. 2 (E.D.Mich.1984); *see also In re Gladding Corp.*, 22 B.R. 632, 634–635 (Bankr.D.Mass.1982) (under the former Bankruptcy Act). The definition formulated by Professor Countryman, V. Countryman, *Executory Contracts in Bankrupt-*

*cy:* Part I, 57 Minn.L.Rev. 439, 460 (1973), and "accept[ed]" by Congress, has been flexibly applied by the courts in light of the purposes and policies of the Code. See *In re Roman Crest Fruit, Inc.*, 35 B.R. 939, 948 (Bankr.S.D.N.Y.1983) (legislative history reflects Congressional acceptance of the Countryman test); *see also In re Gladding, supra,* 22 B.R. at 635; *In re Booth,* 19 B.R. 53 (Bankr.D.Utah 1982).

In *In re Jolly,* 574 F.2d 349 (6th Cir.), *cert. denied,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978), the Sixth Circuit held that a contract to purchase burial plots in a cemetery was no longer executory within the meaning of the Bankruptcy Act, where the debtor-buyer had breached, and the seller had obtained a default judgment for damages in the state court prior to the filing of the debtor's petition.[3] The Sixth Circuit stated,

> The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can't be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.

574 F.2d at 351. In holding that the contract was no longer executory, the Sixth Circuit reasoned:

> The holder of an executory contract has no cause of action; there has not been a breach and no performance is due from the debtor. If it has been breached, and judgment obtained, the precise goal of the [executory contract] rejection provisions [under the Act] has already been accomplished. The claim has been reduced to money damages which can be included in the Wage Earner Plan....

*Id.* at 352.

The Debtor urges the Court to note the "catastrophic effect" on the estate, the Debtor's creditors, and the tenants if the Purchase and Sale Agreement is found to

be non-executory. The Debtor asserts that enforcement of the state court judgment would effect a circumvention of the Bankruptcy Code in that it would permit the Partnership to reap a windfall while. leaving all creditors' claims unsatisfied, and rendering the Chapter 11 proceeding meaningless. *Jolly* is distinguished on two bases: one, that in this case, the Massachusetts Superior Court never found a "breach" which would render the contract non-executory, and, two, that, unlike in *Jolly,* the goal of the rejection provisions would here be undermined. Debtor's Reply Memorandum, at 20–22.

This Court has found no case which holds that a contract which has been reduced to a judgment for specific performance may still be considered to be executory. *Cf. In re Meehan,* 46 B.R. 96 (Bankr.E.D.N.Y. 1985), *aff'd,* 59 B.R. 380 (E.D.N.Y.1986). The Partnership cites two cases, one of which relies on *Jolly* in holding that a contract reduced to a judgment for specific performance was not an executory contract. *See In re Kendall Grove Joint Venture,* 46 B.R. 531 (Bankr.S.D.Fla.1985), *aff'd,* 59 B.R. 407 (S.D.Fla.1986); *In re Pribonic,* 70 B.R. 596 (Bankr.W.D.Penn. 1987).

In *Pribonic,* the buyers had sought and obtained a decree for specific performance which the seller appealed. Before the state appellate court could render a decision, the seller (now the debtor) filed a Chapter 7 petition. The buyer sought relief from the stay, and "because a reversal of the Decree ... would have mooted the [buyer's] Motion," at 597–598, the bankruptcy court continued the motion pending a decision by the Pennsylvania Supreme Court. That Court affirmed the Decree. *Id.*

The bankruptcy court considered the following issue:

> Is the [buyer's] equitable ownership interest in the Property avoidable on the ground that the Sales Agreement, which gave rise to their equitable ownership under the doctrine of equitable conver-

---

**3.** *In re Jolly* was a case under Chapter XIII of the Bankruptcy Act (repealed 1979). 574 F.2d at 350.

sion, is an executory contract that was deemed rejected in bankruptcy under § 365(d)(1)?

*Id.* at 598. The court first determined that the buyer had an equitable ownership interest in the property pursuant to the doctrine of equitable conversion. *See id.* at 598; *cf. Laurin v. DeCarolis Construction Co., Inc.,* 372 Mass. 688, 691, 363 N.E.2d 675 (1977) (in Massachusetts, rights of purchaser under contract for sale of real property are contract rights rather than rights of ownership).

The *Pribonic* court then stated that "[p]roper analysis of the executory nature of the Sales Agreement requires consideration of the effect of the Decree [for specific performance]." At 598–599. Relying heavily on the *Kendall Grove* case, *supra,* the court found that when the buyers obtained their decree, the debtor-sellers

essentially had no further obligation to perform in the future since Pennsylvania Rule of Civil Procedure 1529(b) authorized the Prothonotary or Sheriff to perform the debtor's only remaining obligation: delivery of title. Therefore, under the Countryman definition and the reasoning of Kendall [Grovel, the instant sales agreement is non-executory.

It may be argued that Pennsylvania Rule 1529(b) only empowers the Sheriff ... to transfer title, and that until title is actually transferred the debtors still have a future obligation under the Sales Agreement ... However, even if the debtors still have a future obligation under the Sales Agreement *to transfer title,* we alternatively hold that the debtor's failure to transfer title at this time would not be a material breach ...

at 599, (emphasis supplied) because of the availability of the court-ordered transfer of title. *Id.*[4] *See also Kendall Grove Joint Venture, supra,* 59 B.R. at 409 (contract for sale of real property was executed when buyer recorded its state court judgment for specific performance, under Florida rule).[5]

Clearly the present situation is factually dissimilar to the *Pribonic* case, in that the Debtor here has an additional future obligation to perform under the specific performance decree: transfer to the Partnership of a $1.7 million dollar escrow fund. Although a court-appointed special master could deliver a deed to the Partnership, the Special Master cannot fulfill the debtor's obligations with regard to the escrow fund.

But this Court is convinced that minute analysis of the remaining obligations of the two parties will lead down the wrong analytical track. The fact is that the obligations remaining are obligations imposed by judicial decree.

It is settled law that for section 365 to apply, i.e. for a debtor to assume or reject a contract, the contract must be in existence. "If the contract has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the [debtor] to assume or assign." 2 Collier on Bankruptcy ¶ 365.02 at 365–14 (15th ed. 1987); *see In re Acorn Investments,* 8 B.R. 506, 510 n. 4 (Bankr.S.D.Cal.1981) (lease judicially terminated is not executory); *see also In re Jolly,* 574 F.2d at 351 (final pre-petition judgment on a breached contract is conclusive and may not be collaterally attacked in bankruptcy court); *cf. In re Meehan,* 59 B.R. at 386 (questioning whether state court decision awarding specific perform-

**4.** The Pennsylvania Rule provides in part:
  (b) Where appropriate, the court may order the prothonotary or sheriff to perform any act which a party fails to perform within the time specified by the ... decree....
  42 Pa.Cons.Stat.Ann. § 1529(b) (Purdon 1975), quoted in *Pribonic, supra,* at 599.

**5.** The Partnership notes that Massachusetts has two statutes which are similar to the Florida Rule of Civil Procedure relied on by the District Court in *Kendall.* See M.G.L.A. c. 183, §§ 43, 44 (1977). Section 43 states in part:

Whenever a final decree in equity shall be made by the supreme judicial [or the] ... superior ... court directing that a deed ... of any real estate ... shall be made, and the party directed to make such deed ... does not duly execute it within the time specified in the decree, the decree itself shall operate to vest title to the real estate ... in the party entitled thereto....
*Id.* § 43; *see id.* § 44 (recording of "such" decree shall have the same effect as if a duly executed deed had been recorded.)

ance of land sale contract "executed" the contract).

The District Court in *Meehan* stated:

The question arises, however, as to whether the state court's decision awarding the [buyers] specific performance ... alters the nature of the contract. The state court, by its award, has adjudicated the specific rights and duties under the contract. In doing so, it has brought the force of a court order to bear on what previously had been a private agreement among individuals. It might be argued that the court's action transformed what previously had been an executory contract, i.e. that the court's decision, in a sense, "executed" the contract by judicially declaring the rights and duties of the parties with respect to their agreement.

59 B.R. at 386. By its reasoning, the Debtor would have this Court ignore the Partnership's judgment for specific performance as if irrelevant to the contractual relations of the parties. In the Debtor's view, the filing of a petition in bankruptcy entitles the bankruptcy court to ignore valid state court adjudications of those contractual relations. This Court disagrees.

■ Under certain circumstances, not relevant here, a bankruptcy court may use its equitable powers to look behind a validly issued state court judgment. *See Pepper v. Litton*, 308 U.S. 295, 304–306, 60 S.Ct. 238, 244–245, 84 L.Ed.2d 281 (1939); *Margolis v. Nazareth Fair Grounds & Farmers Market, Inc.*, 249 F.2d 221, 224 (2d Cir.1957); *In re Lockwood*, 14 B.R. 374, 379–380 (Bankr.E.D.N.Y.1981); *In re Fazio*, 41 B.R. 865, 867 (Bankr.E.D.Pa.1984); *see also In re Comer*, 27 B.R. 1018, 1021–1022 (B.A.P. 9th Cir.1983), *aff'd*, 723 F.2d 737 (9th Cir.1984). Absent such circumstances, the judgment cannot be collaterally attacked here. Any remaining obligations of the parties are obligations under that judgment, not under the contract. Thus, whether the delivery of a deed or any

escrow fund (empty or not) can be characterized as "ministerial"—is irrelevant. This Court is bound to give effect to the state court judgment which was rendered prior to the filing of the bankruptcy petition.

## IS THE PARTNERSHIP'S JUDGMENT A CLAIM UNDER SECTION 101(4)(B)?

■ The *Pribonic* court's alternative ground for determining that, under Pennsylvania law, the agreement of sale reduced to a decree for specific performance was non-executory rested on its conclusion that the buyers did not hold a "claim" as defined by 11 U.S.C. § 101(4). At 599–600.[6] Although the courts have said that the term "claim" should be interpreted "broadly", *see e.g. In re A.H. Robbins Co., Inc.*, 63 B.R. 986, 990 (Bankr.E.D.Va.1986) and cases cited, the key phrases in section 101(4)(B) are not defined in the Code. *Ohio v. Kovacs*, 469 U.S. 274, 280, 105 S.Ct. 705, 709, 83 L.Ed.2d 649 (1985). Under section 101(4)(B), a "right to an equitable remedy for breach of performance" is a claim if "such *breach* gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment...." 11 U.S.C. § 101(4)(B) (emphasis supplied). In other words, the language of the statute does not provide that the "judgment" must have given rise to a right to payment, but that the "breach" must give rise to a right to payment. The legislative history, although less than clear, provides a different interpretation:

Section 101(4)(B) represents a modification of the House-passed bill to include [in] the definition of "claim" a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. This is intended to cause the liquidation or estimation of contingent rights of payment for which there may be an alternative equitable remedy with the result that the equitable remedy will be susceptible to being discharged in bankruptcy. *For example, in some*

6. Section 101(4) provides in pertinent part that "claim" means—

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right

to payment whether or not such right to an equitable remedy is reduced to judgment, fixed, continent, matured, unmatured, disputed, undisputed, secured, or unsecured....

*States, a judgment for specific performance may be satisfied by an alternative right to payment, in the event performance is refused;* in that event, the creditor entitled to specific performance would have a "claim" for purposes of proceeding under Title 11.

On the other hand, rights to an equitable remedy for a breach of performance with respect to which such breach does not give rise to a right to payment are not "claims".…

*See* 124 Cong.Rec. H11090 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17406 (daily ed., Oct. 6, 1978) (emphasis supplied).

The legislative history suggests that, if the only remedy allowed by state law for the Partnership's decree is a non-monetary one, then the Partnership does not have a claim. *Cf. In re Aslan*, 65 B.R. 826, 15 B.C.D. 136, 138 (C.D.Cal.1986). As the Partnership contends, under Massachusetts law there is no case or statute which provides that an unenforced judgment for specific performance may be satisfied by a payment of money in the event performance is refused. *See Rix v. Dooley*, 322 Mass. 303, 307, 77 N.E.2d 233 (1948); *cf. Ohio v. Kovacs, supra,* 469 U.S. at 280–283, 105 S.Ct. at 709–711; *In re Aslan, supra,* 65 B.R. 826, 15 B.C.D. at 139.

Thus, the judgment is not a "claim" under section 101(4)(B).

The Debtor, however, seeks to have this Court look behind the remedy ordered by the Superior Court, arguing that the Superior Court never considered whether the Partnership lacked an adequate remedy at law (i.e. could be satisfied with a money judgment). Under Massachusetts law, "a reasonable range of discretion exists with respect to granting or denying specific performance" of land sale contracts. *Raynor v. Russell*, 353 Mass. 366, 367, 231 N.E.2d 563 (1967). However, "in the absence of significant equitable reasons for refusing such relief, specific performance of real estate sale agreements is appropriate." *Id.* at 367–368, 231 N.E.2d 563. The Debtor has failed to show that the Superior Court did not consider the "equitable reasons for refusing such relief." *Id.*

## CONCLUSION

In conclusion, therefore, because the Supreme Judicial Court Decision in *Roxse Homes Ltd. Partnership v. Roxse Homes, Inc.* 399 Mass. 401, 504 N.E.2d 633 was issued after the filing of the Debtor's Chapter 11 petition, that decision is void. However, because the Partnership has a decree for specific performance of the Purchase and Sale Agreement from the Superior Court of Massachusetts, and that decree is not a "claim" against the Debtor's estate under 11 U.S.C. § 101(4), the Partnership has shown "cause" for relief from stay under section 362(d)(1). Because the Partnership has shown "cause", the Court need not reach the issues under section 362(d)(2) of equity and necessity for reorganization. *Cf. In re Albany Partners, Ltd.* 749 F.2d 670, 673 n. 7 (11th Cir.1984).[7]

The Partnership's Motion for Relief from Stay is allowed. The parties are free to take whatever action they deem appropriate with regard to the pending appeal of the Superior Court decree. It is inappropriate for the Bankruptcy Court to speculate as to what actions the Supreme Judicial Court will now take.

---

**7.** The Debtor contends that the Partnership's efforts to obtain relief to enforce its judgment are efforts to "circumvent the bankruptcy process" for a private "windfall", while leaving all of the Debtor's unsecured creditors with only a property-less, and thus judgment proof, debtor. Debtor's Memorandum in Opposition to Motion, at 2, 6–7. However, at oral argument on May 4, 1987, the Partnership reiterated its obligation to assume all debts against the Debtor which arose after the signing of the Purchase and Sale Agreement on or about February 24, 1984.