**ROXSE HOMES, INC.,**
Debtor–Appellant,

v.

**ROXSE HOMES LIMITED PARTNERSHIP, Appellee.**

Civ. A. No. 87–1909–T.

United States District Court,
D. Massachusetts.

March 3, 1988.

Paul D. Moore, Foley, Hoag & Eliot, Boston, Mass., for debtor-appellant.

Francis J. Lawler, Peabody & Brown, Boston, Mass., for Roxse Ltd. Partnership.

## MEMORANDUM

TAURO, District Judge.

This is an appeal from an order of the bankruptcy court, *In re Roxse Homes, Inc.*, 74 B.R. 810 (Bankr.D.Mass.1987), which granted relief from automatic stay so that the debtor's primary asset could be transferred pursuant to a state court order.

### I

Appellant Roxse Homes, Inc. owned a 364–unit subsidized housing complex, consisting of one high-rise and several low-rise buildings in the Roxbury–South End area (the "property"). The property was developed in the early 1970's as an urban renewal project, with federal mortgage financing provided through the Department of Housing and Urban Development (HUD).

By late 1975, appellant had stopped making payments on its mortgage note obligations. In July, 1983, HUD referred the matter to the United States Attorney for mortgage foreclosure. As of February 24, 1984, appellant owed $9,413,908.27 under the mortgage note, and had fallen more than $3 million in arrears.[1]

Facing mounting financial pressures, in February, 1984, appellant arranged to restructure ownership of the property. Under the plan eventually adopted, the property would be sold to an entity called Roxse Homes Limited Partnership, appellee in this case. Appellant and appellee entered into an agreement for purchase and sale of the property on February 24, 1984. That contract called for appellant to transfer the property and a $1.7 million escrow fund to appellee, in exchange for the sum of $13.7 million.

On December 31, 1984, HUD gave preliminary approval to the deal. Appellant then refused to go through with the sale. In October, 1985, appellee sued appellant in Massachusetts Superior Court for specific performance of the purchase and sale contract.

The Superior Court issued a preliminary injunction on October 24, 1985, forbidding appellant from using, for any purpose other than repairs to the project, the escrow fund that appellee was to receive under the agreement. The following month, appellee served its first discovery request on appellant. It asked appellant to produce, among other things, records relating to the escrow fund. Appellant repeatedly refused to produce these documents, in violation of various court orders.[2]

On May 14, 1986, the Superior Court allowed appellee's motion for judgment, as a discovery sanction for appellant's "bla-

---

1. By the time appellant filed its Chapter 11 petition, it owed HUD $13,680,030, had incurred unsecured debt of $403,539.29, and owed the Commonwealth of Massachusetts more than $600,000 in unpaid excise taxes.

2. In February, 1986, a judge ordered appellant to produce the records. Appellant thereupon came forward with some, but not all, of the requested documents. Appellant was ordered to produce the records a second time, and again refused to comply. Appellee moved for entry of judgment. A judge allowed the motion, unless

recent records of the escrow account were produced within seven days. Appellant did not respond within seven days, but somewhat later produced copies of checks that had been altered to block out crucial information, including the name of the bank holding the escrow fund. Other records were still not produced. *See Roxse Homes Limited Partnership v. Roxse Homes, Inc.*, 399 Mass. 401, 404–05, 504 N.E.2d 633 (1987). Appellant now concedes that the $1.7 million escrow fund no longer exists.

tant obstructionism". The court entered an order of specific performance. The order provided that if appellant failed to execute and deliver a deed in 10 days, the court would appoint a special master to do so.

This judgment was appealed, and the Massachusetts Supreme Judicial Court ordered direct review. Oral argument was held on November 3, 1986.

Appellant filed its Chapter 11 petition on January 20, 1987. Neither party informed the Supreme Judicial Court that a bankruptcy petition had been filed.

The Supreme Judicial Court affirmed the award of specific performance on March 11, 1987. *Roxse Homes Limited Partnership v. Roxse Homes, Inc.*, 399 Mass. 401, 504 N.E.2d 633 (1987). The opinion stated that "Roxse Homes's noncompliance was a clear violation of court orders ... The ultimate sanction imposed was amply justified in the circumstances." *Id.* at 406, 504 N.E.2d 633. Appellant filed a motion for reconsideration, which was denied on March 31, 1987.

On March 27, 1987, the appellee moved in bankruptcy court for relief from the automatic stay imposed by 11 U.S.C. § 362(a). Appellee asked that it be allowed to enforce the Superior Court judgment and compel appellant to transfer the property.

The bankruptcy court (Carol J. Kenner, J.) allowed appellee's motion for relief from stay,[3] in an opinion dated June 3, 1987. *In re Roxse Homes, Inc.*, 74 B.R. 810 (Bankr. D.Mass.1987). The bankruptcy court made three holdings:

(1) The Supreme Judicial Court's decision "must be considered null and void", because the automatic stay applies to appellate proceedings, 74 B.R. at 813–15;

(2) The purchase and sale agreement was not an "executory" contract that the debtor could assume or reject, because the contract was terminated by the Superior Court's prepetition judgment for specific performance, 74 B.R. at 815–18; and

(3) The prepetition judgment for specific performance is not a "claim" under 11 U.S. C. § 101(4)(B), because no Massachusetts case or statute provides that such a judgment may be satisfied by a payment of money damages in the event specific performance is refused. 74 B.R. at 818–19.

In the instant appeal, debtor-appellant challenges the latter two holdings. For the reasons set forth below, this court affirms the bankruptcy court's decision.

## II.

The Bankruptcy Code gives debtors the choice of assuming or rejecting executory contracts to which they are parties. *See* 11 U.S.C. § 365. Appellant here seeks to treat its agreement with appellee as executory, and reject it pursuant to § 365. Once the contract is rejected, of course, it cannot support an order for relief from the automatic stay.

■ The purchase and sale agreement at issue is not executory, because it has been reduced to judgment. The "contract" between the parties, as such, no longer exists. Instead, all the rights and duties of appellant and appellee now derive from the prepetition state court judgment, which cannot be "rejected" under § 365. The court's judgment replaced the consensual obligations of contract with a new set of duties imposed by judicial command.

■ Once a judgment for specific performance is entered, the parties' remaining unperformed obligations become non-material, or "ministerial" acts through which the parties merely carry out the court's directive. Indeed, the Superior Court's order in this case was *self*-executing. It provided that a special master would fulfill the parties' obligations, if the parties refused to do so.

Courts agree that the phrase "executory contract" cannot be applied to a judicial order. *See, e.g., In re Jolly*, 574 F.2d 349, 351 (6th Cir.), *cert. denied* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978) (where debtor had defaulted and breached contract

---

**3.** On June 9, 1987, the Bankruptcy Court allowed appellant's emergency motion to stay the order pending appeal. This order has preserved the status quo between the parties.

to buy spaces in cemetery, and cemetery's claim was reduced to final judgment, debtor could not reject agreement as executory, because there was "no obligation for the debtor to do anything in the future. His duty is in the past, he had breached that duty, and had judgment entered against him for that breach"); *Kendall Grove Joint Venture v. Martinez–Esteve*, 59 B.R. 407 (S.D.Fla.1986) (contract for sale of real property was nonexecutory, where state court had entered prepetition order for specific performance, and where only task which remained was ministerial one of delivering title); *In re Meehan*, 59 B.R. 380, 386 (E.D.N.Y.1986) (state court judgment may have "executed" contract by judicially declaring rights and duties of parties); and *In re Pribonic*, 70 B.R. 596 (Bankr.W.D. Pa.1987) (vendees under real estate sales agreement were entitled to relief from automatic stay to enforce prepetition decree of specific performance against vendor). *See also In re Bassett*, 74 B.R. 361, 362 (Bankr.D.Colo.1987) (under Colorado law, contract for purchase and sale of real property which is buttressed by prepetition order of specific performance was not executory).

The option of rejection is therefore not open to appellant.

### III.

Appellant also argues that appellee is not entitled to relief from the automatic stay because the state court judgment is an ordinary "claim" against the debtor's estate. As the holder of such a claim, appellee would have the status of an unsecured creditor, and would lack the property interest necessary to support an order for relief from stay.

■ Under the Bankruptcy Code, "claim" means—

. . . . .

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured;

11 U.S.C. § 101(4). By the terms of this provision, the right to an equitable remedy will only constitute a claim if the underlying breach gives rise to a right to the payment of money damages.

Under Massachusetts law, an award of specific performance imports a judicial finding that monetary damages are inadequate or inappropriate:

> The fact that the plaintiff has a remedy in damages shall not bar an action for specific performance of a contract, other than one for purely personal services, *if the court finds that no other existing remedy, or the damages recoverable thereby is in fact the equivalent of the performance promised by the contract* relied upon by the plaintiff, and the court may order specific performance if it finds such remedy to be practicable. If performance is not ordered, damages may be determined in the proceeding ...

Mass.Gen.L. ch. 214, § 1A (emphasis supplied). *See also Rigs v. Sokol*, 318 Mass. 337, 342, 61 N.E.2d 538 (1945) ("It may be taken to be settled in this Commonwealth that the question whether a contract will or will not be specifically enforced depends upon the question whether the thing contracted for can be purchased by the plaintiff, and whether damages are an adequate compensation for a breach."); *Friend Bros., Inc. v. Seaboard Surety Co.*, 316 Mass. 639, 645, 56 N.E.2d 6 (1944) (same).

Moreover, money damages are usually an inadequate remedy where, as here, the contract is for a sale of real estate. As the Supreme Judicial Court has noted, "Every piece of real estate has some unique disadvantage as well as advantage. The eagerness of buyers to acquire some properties is matched by the joy with which sellers part with others." *Olszewski v. Sardynski*, 316 Mass. 715, 717, 56 N.E.2d 607 (1944). Consequently, "in the absence of significant equitable reasons for refusing such relief, specific performance of real estate agreements is appropriate." *Raynor v. Russell*, 353 Mass. 366, 367–68, 231 N.E.2d 563 (1967). Indeed, "specific per-

formance ... is usually granted with respect to contracts to convey land." *Kaplan v. Bessette*, 357 Mass. 233, 235, 257 N.E.2d 926 (1970) (citing *Raynor v. Russell, supra* ).

In the instant case, appellee will spend $13.7 million to acquire a unique piece of real property. The Superior Court reasonably concluded that awarding appellee money damages could not substitute for specific performance of this contract.

Appellant argues that the Superior Court's decision should receive little deference from this court, because it was entered as a discovery sanction, without a hearing on the merits. Appellant also contends that the breach in this case "gives rise to a right to payment" because the Superior Court *could have* awarded money damages in its discretion, even though it chose not to do so.

■ Appellant confuses the state court's *judgment* with its *order*. As a discovery sanction, the Superior Court entered judgment for appellee on liability issues. But its summary decision of the *liability* question did not bar the Superior Court from giving plenary consideration to the merits of the various *remedies* available. Indeed, in crafting its order, the Superior Court was under a statutory obligation to grant specific performance only upon a finding that the remedy of damages would be inadequate. In the absence of any evidence to the contrary, this court will presume that the state court followed state law. In fact, the cases cited above suggest that the Superior Court had an ample basis in state law for deciding that money damages are not appropriate in a real property case such as this.

Since an award of money damages would have been improper, the breach at issue clearly did not "give rise to a right to payment." Consequently, appellee does not hold a "claim" under 11 U.S.C. § 101(4)(B).

**4.** In light of this decision, appellee's motion to vacate the bankruptcy court's stay order of June

IV.

The Superior Court's prepetition order of specific performance is neither an executory contract, nor a claim that can be reduced to a payment of money. The bankruptcy court therefore properly allowed appellee's motion for relief from stay.

An order will issue.[4]