ROXSE HOMES LIMITED PARTNERSHIP vs. ROXSE HOMES, INC.
(and a companion case[1]).

Suffolk. November 3, 1986. — March 11, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil,* Discovery, Default, Judicial discretion, Intervention. *Housing. Boston Redevelopment Authority.*

A judge acted appropriately, and within his discretion under Mass. R. Civ. P. 37 (b), in ordering entry of a judgment against the seller for specific performance of a real estate purchase and sale agreement, where the seller had failed to respond adequately to the opposing party's repeated requests under Mass. R. Civ. P. 34 for production of documents and had been in clear violation of the judge's orders in aid of those requests. [404-406]

Discussion of statutory provisions requiring the approval of the Boston Redevelopment Authority before a developer may lawfully transfer ownership of a subsidized housing development constructed under G. L. c. 121A, with particular reference to G. L. c. 121A, § 16A, which permits unapproved transfers of ownership for the purpose of averting foreclosure. [406-409]

Where the interests of potential interveners in a civil action were adequately protected by a preliminary injunction entered in a second, related action, there was no need to allow their postjudgment motion for leave to intervene. [409]

CIVIL ACTION commenced in the Superior Court Department on October 18, 1985.

A motion for entry of judgment was heard by *Robert A. Mulligan,* J., and a postjudgment motion for leave to intervene was heard by *John T. Ronan,* J.

CIVIL ACTION commenced in the Superior Court Department on May 28, 1986.

---

[1] Boston Redevelopment Authority *vs.* Roxse Homes, Inc., & another.

A motion for preliminary injunctive relief was heard by *John T. Ronan,* J.

Leave to prosecute an interlocutory appeal in the second case was granted in the Appeals Court by *John M. Greaney,* C.J., and an order consolidating the appeals in the two cases was entered by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Stephen J. Kuzma* for Roxse Homes, Inc.

*Kevin J. Morrison* for Boston Redevelopment Authority.

*Paul R. Collier* for Roxbury-South End Tenants Council, Inc., & others.

*Francis J. Lawler (Bruce C. Ramsey* with him) for Roxse Homes Limited Partnership.

WILKINS, J. These companion cases, consolidated for appeal by an order of a single justice of the Appeals Court and brought here directly on our allowance of the application of Roxbury-South End Tenants Council, Inc. (Tenants Council), concern the ownership of a 364-unit federally subsidized low and moderate income housing development (development) in the Roxbury-South End area of Boston. In the first action, Roxse Homes Limited Partnership (partnership) sought specific performance against Roxse Homes, Inc. (Roxse Homes), of an agreement to sell the development and, on May 14, 1986, obtained a favorable judgment entered as a sanction because Roxse Homes failed to comply with discovery orders. We shall first discuss Roxse Homes's appeal from that judgment.[2] At the end of the opinion we briefly discuss the appeal of the Tenants Council and two individuals from the denial of their postjudgment motion to intervene in the first action.

In the second action, commenced on May 28, 1986, the Boston Redevelopment Authority (BRA) sought to enjoin the court-ordered conveyance of the development on the ground that governing statutes require the BRA's approval of transfers of developments constructed under G. L. c. 121A (citing G. L. c. 121A, § 11 [1984 ed.]) and further require BRA review of

---

[2] The Appeals Court Justice stayed that judgment pending appeal.

an application of an entity desiring to acquire such a G. L. c. 121A development (citing St. 1960, c. 652, § 13A, inserted by St. 1965, c. 859, § 3, and amended by St. 1966, c. 421, § 6). A Superior Court judge, noting that at almost the last possible moment the BRA was seeking to negate the effect of the judgment in the first case, issued a preliminary injunction, declining to enjoin the transfer of title directed by the judgment in the first case but nevertheless enjoining the partnership after it took title from transferring or encumbering the property and from increasing rents. A single justice of the Appeals Court vacated the preliminary injunction and allowed the BRA to seek interlocutory review of the Superior Court judge's refusal to enjoin the transfer of title during the pendency of the case.

The judge's preliminary injunction was eminently appropriate, and the BRA was entitled to nothing more. The judge entered an order that fully preserved the option at the conclusion of the case to reverse any transfer of title made pursuant to the judgment in the first case, while not overruling the effect of a judgment entered by another judge. If the BRA's approval of the conveyance was necessary as a matter of law, any purported transfer without that approval would be ineffective, even without an injunction, and could be corrected by judicial order.[3] Because the only issue on appeal in the second case is the BRA's challenge to the judge's refusal to enjoin the transfer of title, we need not consider any other question in that case. Inherent, however, in the BRA's claim for relief is the issue, fully briefed by the parties, whether BRA approval is a precon-

---

[3] This point deserves no further discussion, but, because of the zeal with which the BRA asserts that the preliminary injunction should not have been issued and that an order enjoining the transfer of title should have been entered, we add a few comments. The judge heard all parties in open court on the question of granting preliminary relief. The BRA's assertion that it, the plaintiff, was caught by surprise by events is itself surprising. In any event, the BRA did not object to the hearing procedure at the time. As a public agency seeking to enforce an asserted statutory requirement, the BRA need not show irreparable harm in order to obtain a preliminary injunction, but it had to demonstrate that the public interest supports the need for injunctive relief. See *Commonwealth* v. *Mass. CRINC,* 392 Mass. 79, 89-90 (1984). There was no showing that the public interest required broader injunctive relief than the judge granted.

dition to the lawful transfer of the development from Roxse Homes to the partnership. This legal question is one that will arise at trial on the merits, and we shall discuss it after we dispose of Roxse Homes's appeal.[4]

## Roxse Homes's Appeal

Roxse Homes has appealed challenging, as an abuse of discretion, the order entered in the action against it directing entry of final judgment in favor of the partnership as a sanction for Roxse Homes's failure to comply with judicial orders. The judge ruled that Roxse Homes's response to his discovery order was "so inadequate, in form and content, that it constitutes a clear violation of this Court's order." He added that a finding of blatant obstructions by Roxse Homes would have been warranted. The judgment directed Roxse Homes specifically to perform its obligations under the purchase and sale agreement, including delivering a deed of the premises to the partnership. The judge's order was well within his discretion.

Roxse Homes's failure to respond adequately, first to the partnership's request for discovery and subsequently to court orders, justified imposition of the ultimate sanction of judgment against it. In February, 1986, a judge ordered Roxse Homes to produce documents, all of which Roxse Homes had declined to produce in response to the partnership's November, 1985, request pursuant to Mass. R. Civ. P. 34, as amended, 385 Mass. 1209 (1982). Roxse Homes thereupon came forward with some but not all requested documents. Again ordered to comply, Roxse Homes did not produce other documents seasonably. The partnership filed a motion for entry of judgment, and almost simultaneously Roxse Homes produced certain further documents. However, Roxse Homes did not produce recent records of an escrow account which was to be transferred

---

[4] There is no statutory procedure for the BRA to consider this legal question within the agency first. The BRA makes no claim here or in its complaint that it has primary jurisdiction over the issue or that there are administrative remedies that should have been exhausted before a court may properly decide this question.

to the partnership under the alleged purchase and sale agreement. A judge allowed the partnership's motion for judgment unless recent records of the escrow account were produced within seven days (and a long-delayed deposition was held). Roxse Homes did not respond within seven days, but somewhat later did produce a supplemental response in which copies of checks were so made as to conceal the identity of the bank in which the escrow fund was held. Other information on the checks was also concealed. Other records were not produced. Because of Roxse Homes's "clear violation" of the judge's order for production, on motion of the partnership, the judge allowed entry of judgment against Roxse Homes in May, 1986.

We deal here with Mass. R. Civ. P. 37 (b), as amended, 390 Mass. 1208 (1984), which concerns sanctions for failure to comply with an order of a court. Since January 1, 1984, sanctions under rule 37 (b) need not be based on a wilful failure to comply.[5] Opinions based on the rule in its original form are not so instructive for the purpose of this case as are opinions dealing with rule 37 (b), as now amended.[6] The purpose of the amendment was " 'to increase compliance with discovery orders, by making it easier for parties to achieve, and judges to award, sanctions for failure to comply with a discovery order.' " *Greenleaf* v. *Massachusetts Bay Transp. Auth.*, 22

---

[5] Prior to its amendment, effective January 1, 1984 (see 390 Mass. 1208), rule 37 (b) permitted the imposition of sanctions only when there was a wilful failure to obey a court order or direction. See Mass. R. Civ. P. 37 (b) (1) and (2), 365 Mass. 798 (1974).

In interpreting Fed. R. Civ. P. 37 (b), which is similar but not identical to Mass. R. Civ. P. 37 (b), the United States Supreme Court has held that it is within the limits of due process to allow the sanction of default where failure to comply is not due to an inability to comply. See *Societe Internationale* v. *Rogers,* 357 U.S. 197, 212 (1958). See also *National Hockey League* v. *Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 640 (1976); *G-K Properties* v. *Redevelopment Agency of San Jose,* 577 F.2d 645, 648 (9th Cir. 1978). Roxse Homes has made no argument or showing that the requested documents are not within its control.

[6] Roxse Homes relies largely on pre-amendment cases. See, e.g., *Henshaw* v. *Travelers Ins. Co.,* 377 Mass. 910 (1979); *Bob Berman Assocs.* v. *Gross,* 15 Mass. App. Ct. 1000 (1983); *Ticchi* v. *Ambassador Cab, Inc.,* 11 Mass. App. Ct. 912 (1981).

Mass. App. Ct. 426, 430-431 (1986), quoting Reporters' Notes to Mass. R. Civ. P. 37, Mass. Ann. Laws, Rules of Civil Procedure at 15 (1986).[7]

Roxse Homes's reasons for its noncompliance and its argument that judgment against it was unwarranted are unpersuasive. Claimed defects in the scope of the order and the alleged irrelevance of the documents sought are matters that properly could have been raised in opposition to the order for compliance, but they do not justify noncompliance. The absence of prejudice to the partnership due to the noncompliance, if that is a fact, does not make the sanction imposed unreasonable. Roxse Homes's noncompliance was a clear violation of court orders. It had more than one opportunity to comply and did not. It does not even show that, when it sought reconsideration of the entry of judgment, it then offered to comply with the court's order. The ultimate sanction imposed was amply justified in the circumstances. See *Maywood Builders Supply Co. v. Kaplan,* 22 Mass. App. Ct. 944 (1986); *Greenleaf* v. *Massachusetts Bay Transp. Auth., supra* at 427.

## *BRA's Appeal*

We consider here the BRA's underlying claim that in the circumstances its approval is required before a valid conveyance of the development may be made.[8] The BRA relies on the provisions of G. L. c. 121A, § 11, and St. 1960, c. 652, § 13A, inserted by St. 1965, c. 859, § 3, and amended by St. 1966, c. 421, § 6, which we shall discuss subsequently.

In arguing that BRA approval is not required, the partnership appropriately relies on the provisions of G. L. c. 121A, § 16A (1984 ed.), which it claims authorizes the conveyance without BRA approval. Section 16A provides in part that "if in order to avert [foreclosure of a mortgage,] the corporation shall make a conveyance or otherwise release or quitclaim its interests in the [project], the successor in interest thereto . . . shall, upon

---

[7] A wilfulness finding is required for imposing sanctions under rule 37 (d), for certain failures, such as failing to appear at a properly called deposition. The sanction imposed in this case is not based on rule 37 (d).

[8] In its brief, the Tenants Council argues in support of the BRA's position.

its acquisition of the project . . . have the option of (1) holding the same subject to all the provisions of this chapter and having all of the powers, rights, privileges, benefits and exemptions set forth in this chapter" or (2) conveying to a purchaser who would so hold the premises, or (3) conveying the premises free from the restrictions of G. L. c. 121A, and with none of its benefits, provided the BRA approves (or, in other cases not relevant here, some other governmental authority approves). The acquiring entity must exercise its option within one year from the acquisition of its interest.

There are record references that suggest that the partnership's acquisition of the development was intended to avert foreclosure of the first mortgage held by the United States Department of Housing and Urban Development (HUD). The February 24, 1984, purchase and sale agreement required the parties to seek HUD approval of the transfer of physical assets. The mortgage was then in default, and no principal or interest payments had been made since September, 1975. HUD had the right to take possession of the development, and, on July 19, 1983, the Secretary of HUD had instructed the United States Attorney to begin foreclosure proceedings. In December, 1984, HUD agreed to a "Provisional Workout Arrangement" by which the default might be cured, and HUD consented to the sale and granted the partnership preliminary approval for the transfer of assets. The partnership alleges that it took possession of the property under the terms of the purchase and sale agreement.

At this stage of the case, we should not and cannot resolve the factual question whether a conveyance of the development to the partnership was to be made to avert (or would now be made to avert) foreclosure. If this factual premise is correct, § 16A authorizes the conveyance without BRA approval. The transferred premises would have to be held subject to the provisions of G. L. c. 121A, unless the BRA approves the partnership's option to the contrary elected within one year of its acquisition of the development.[9]

---

[9] Both the BRA and the Tenants Council substantially concede in their briefs that prior BRA approval would not be required if a mortgagee fore-

Section 16A of G. L. c. 121A is, therefore, an exception to the general prohibition of unapproved transfers of developments set forth in the governing statutes.[10] BRA approval is normally required for the sale of a development by a corporation authorized to undertake or acquire G. L. c. 121A projects. See G. L. c. 121A, § 11, third par.[11] Under St. 1960, c. 652, § 13A, a partnership and others may apply to the BRA "for its approval of their acquisition of a project which has been authorized and approved and which has been developed or is being developed." If the BRA determines that the persons "appear to have the ability requisite to perform the obligations and carry out the duties imposed by [G. L. c. 121A] with respect to the project" and no fundamental changes in the project are proposed, the BRA must issue a certificate of approval. *Id.*

There is an obvious tension between the prior approval requirements of § 11 and § 13A, on the one hand, and § 16A concerning foreclosures and foreclosure threats, on the other. To accept the BRA and Tenant Council's position that prior BRA approval is required in the circumstances would be to ignore language in § 16A specifically addressed to the matter of foreclosures and actions taken to avert foreclosures. Section 16A of G. L. c. 121A provides a measure of protection to mortgage lenders on G. L. c. 121A projects by assuring them that approval by a State agency will not be needed either in order to foreclose on a defaulted mortgage or in order to permit the mortgagor and others to work out a plan to avert foreclosure, subject, however, to the requirement that the development may be released from the restrictions of G. L. c. 121A only with State (in this case, BRA) approval. With the protection § 16A

---

closed. Section 16A makes no distinction between foreclosing mortgagees and persons acquiring premises in order to avert foreclosure.

[10] Nothing in the legislative history of the arguably relevant statutes points to a different conclusion.

[11] Section 11 provides: "Any such corporation shall have the power, with the approval of the housing board, to sell . . . or otherwise transfer" property constituting a project or a portion of a project to certain corporations or "any other authorized entity under this chapter." In Boston the BRA exercises the powers of the housing board under § 11. St. 1960, c. 652, § 12.

provides, lenders may be more willing to lend and to lend at more favorable rates than they would if the protection of § 16A were not available.

In further proceedings, the question whether the transfer of the project would, or was intended to, avert a foreclosure will have to be decided. If the exception of § 16A to prior BRA approval is applicable, the transfer is valid without that approval. We express no opinion on what changes, if any, the partnership may make without BRA approval, if it acquires the development.

## *Tenant Council's Appeal*

One week after judgment had been entered in the first action in favor of the partnership and against Roxse Homes, Roxbury-South End Tenants Council, Inc., and two tenants in the development (James McNeill and Alma Watson) moved for leave to intervene as defendants alleging that BRA approval was an essential precondition to any conveyance of the development. A judge heard the motion to intervene six days later at the same time he heard the BRA's motion for injunctive relief against the sale in its action against Roxse Homes and the partnership.

The preliminary injunction in the second, the BRA-initiated, action adequately protects the Tenants Council's interests while the BRA's action is pending, and until it is ultimately decided in that case whether the circumstances justify the transfer of the property without BRA approval. There was, therefore, no need to permit intervention in the action between Roxse Homes and the partnership. It matters little that title to the development might pass pursuant to the judgment in the first action (the partnership against Roxse Homes) because, if BRA approval is required, the transfer is ineffective, and appropriate relief can be obtained in the BRA-initiated case.[12]

---

[12] What we have said about the motion to intervene should not be read to imply that the Tenants Council would have been allowed to intervene as a matter of right at the late date it sought intervention, if the BRA action had not been commenced and a preliminary injunction had not issued.

## *Conclusion*

The judgment in the action brought by Roxse Homes Limited Partnership against Roxse Homes, Inc., is affirmed. The order denying the motion to intervene in that action is affirmed.

In the action brought by the BRA against Roxse Homes, Inc., and Roxse Homes Limited Partnership, the order granting a preliminary injunction is affirmed, and the case is remanded for further proceedings.

*So ordered.*