## EAGLE FUND, LIMITED *vs.* KARLIS SARKANS.

No. 03-P-184.

Middlesex. March 1, 2004. - March 4, 2005.

Present: ARMSTRONG, C.J., GELINAS, & COWIN, JJ.

*Securities,* Sale. *Practice, Civil,* Default. *Judgment,* Default.

In a civil action alleging that the defendant misrepresented material facts in
connection with the sale of securities in violation of Massachusetts and
Washington State securities laws, a Superior Court judge properly denied
the defendant's summary judgment motion, where the defendant could not
discharge or defeat his obligation, under Massachusetts law, of truthfulness
to the buyer by attaching an integration clause to the offering materials or
subscription agreement, where the defendant failed to demonstrate that the
plaintiff investment corporation had no reasonable expectation of proving
reasonable reliance as required under Washington law, and where a fact
finder could conclude that omissions of information regarding where the
fund that the defendant managed invested would be material to a reason-
able investor. [82-85]
In a civil action, there was no abuse of discretion in the entry of a default
judgment against the defendant, where that judgment was justified by the
defendant's gross disregard and lack of respect for the judicial process,
exemplified by, inter alia, his failure to provide handwriting exemplars in
direct violation of a court order. [85-87]

CIVIL ACTION commenced in the Superior Court Department on
September 28, 1998.

The case was heard by *Julian T. Houston,* J. on motions for
summary judgment, and a motion for entry of a default judg-
ment was heard by *Regina L. Quinlan,* J.

*Allen C.B. Horsley* for the defendant.

*Mark J. Hyland* for the plaintiff.

ARMSTRONG, C.J. Eagle Fund, Limited (Eagle), a Cayman
Islands-based investment corporation, alleged that the defendant,
Karlis Sarkans, misrepresented material facts in connection
with the sale of securities in violation of Massachusetts and

Washington State securities laws. A Superior Court judge entered a default judgment of liability against Sarkans for his failure to comply with court-ordered discovery. Sarkans appealed from entry of the default judgment and from the denial of his motion for summary judgment on the securities claims.

The background of the dispute is set out in Eagle's complaint and the exhibits attached thereto. Sarkans founded and managed Thornhill Asset Management Limited (Thornhill) and Thornhill Global Deposit Fund Limited (Fund). The Fund invested in fixed income instruments in developing countries; Thornhill made investment decisions for the Fund. Jonathan Spring was director of investor relations for Thornhill and the Fund.[1]

On June 11, 1998, Isabelle Julliard telephoned Spring to discuss investing in the Fund. Julliard was an employee of Genessee Investments, Eagle's investment manager, located in Washington State. Julliard informed Spring that Eagle would not invest in the Fund if it had Russian investments. Spring assured her that the Fund had liquidated its Russian investments in 1997.[2]

That same day, Spring mailed Julliard investment materials, including the Fund's "Private Placement Memorandum" (PPM), which stated, in pertinent part: "The Shares described herein are offered solely on the basis of information contained in this Memorandum and any further information given or representations made by any person may not be considered as having been authorized by the Fund." The PPM did not identify the countries in which the Fund invested.[3] A personalized letter signed by Sarkans accompanied the PPM, and stated: "We [i.e., the Fund] also sold most of our Russian positions in early 1997 into significant liquidity." Beneath Sarkans' signature on the letter appeared the words "Investment Manager." On June 12,

---

[1]Thornhill, the Fund, and Spring, all named as defendants in the complaint, are not parties to this appeal.

[2]Deposition testimony from Spring and Julliard supported this version of events.

[3]Instead, the PPM stated: "The Fund provides investors with the opportunity to participate in the high growth potential regions of the emerging markets ('the Region'). . . . Countries included in the Region and as defined by the term 'emerging markets' shall be as determined by the Investment Advisor and Manager."

Sarkans telephoned Julliard and Donald Morken, president of Eagle's investment manager, and assured them that the Fund had no Russian investments.[4]

On July 1, 1998, Eagle invested $1.5 million in the Fund. Contrary to Sarkans' assurances, the Fund was heavily invested in Russian debt instruments. Russia defaulted on its government debt in August, 1998, and the Fund lost approximately half its value. Despite Eagle's requests, the Fund has not returned any of Eagle's investment.

On September 28, 1998, Eagle filed a suit against Sarkans, Spring, Thornhill, and the Fund seeking return of its investment. Among other claims not here relevant, Eagle alleged that Sarkans misrepresented material facts in connection with the sale of a security, in violation of the Uniform Securities Act, G. L. c. 110A, § 410(*a*)(2), and two sections of the Securities Act of Washington, Wash. Rev. Code §§ 21.20.010 and 21.20.430 (1999).

As the suit progressed, Sarkans repeatedly obstructed Eagle's attempts at discovery. Eagle made its initial document request in November, 1998. In response, Sarkans explained that he had shredded Fund-related documents every two weeks. When Eagle sought to recover electronic records, Sarkans replied that he sold or gave away all Fund-related computers shortly after the Russian default.

Sarkans also maintained that he did not found the Fund, that he did not name the Fund "Thornhill" (the name of his hometown), and that he was merely a consultant to the Fund, not the investment manager. Sarkans claimed that Elizabeth Smith, the Fund's director, made the investment decisions. Smith and Spring testified to the contrary in their depositions.[5]

When confronted with documents identifying him as the investment manager, and drafts of various Fund documents containing his handwritten comments, Sarkans claimed that the

---

[4]Julliard and Morken testified to the conversation at their depositions.

[5]Spring testified that Sarkans started the Fund in 1993 and made all the investment decisions. Smith testified that she did not make investment decisions for the Fund and received a salary of $2,000 per year for signing paperwork as directed.

documents were forgeries.[6] Sarkans refused to provide a handwriting exemplar for comparison to the handwriting on the documents, and Eagle moved to compel.

A Superior Court judge granted Eagle's motion on June 30, 2000, and ordered Sarkans to provide an exemplar at his next deposition. Shortly thereafter, in October, 2000, Sarkans moved for summary judgment dismissing Eagle's complaint. The motion was denied on May 3, 2001.

Sarkans avoided giving the handwriting exemplar for over one year,[7] finally attending a July 3, 2001, deposition. Sarkans, at that point appearing pro se, arrived three hours late, refused to provide an exemplar, and left the deposition.

In response, Eagle filed a motion to hold Sarkans in contempt and for entry of a default judgment against him. The motion was allowed, and on January 3, 2002, a default judgment entered against Sarkans pursuant to Mass.R.Civ.P. 55(b)(2), as amended, 423 Mass. 1402 (1996). A separate and final judgment entered against Sarkans pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974).

1. *The summary judgment motion.* The judge correctly denied Sarkans' summary judgment motion.[8] Sarkans argues that Eagle,

---

[6] At about this time, Sarkans changed his signature. Initially he testified that his handwriting may have changed because he started lifting weights. Later he testified that he has two signatures, one for official documents, and one for other types of documents.

[7] Eagle unsuccessfully sought to depose Sarkans in September, 2000. Sarkans' second set of lawyers withdrew from the case in November, 2000, and a Superior Court judge suspended proceedings for sixty days. Sarkans elected to continue pro se. Eagle arranged to depose Sarkans on May 31, 2001. On May 30, Sarkans faxed Eagle's attorneys a letter stating that he was ill and would be unable to attend the deposition, together with a doctor's note which stated that he was being treated for an ear infection.

[8] Eagle argues that Sarkans should not be allowed to appeal the denial of summary judgment because the default judgment bars Sarkans from challenging his liability "on the merits." Under Mass.R.Civ.P. 55(b), the factual allegations of a complaint are accepted as true for the purposes of establishing the liability of the defaulted party. *Marshall* v. *Stratus Pharmaceuticals, Inc.*, 51 Mass. App. Ct. 667, 670-671 (2001). See *Danca Corp.* v. *Raytheon Co.*, 28 Mass. App. Ct. 942, 943 (1990). However, a party in default does not admit conclusions of law, and may contest the sufficiency of the complaint and its allegations to support the judgment. See *Productora e Importadora de Papel, S.A. de C.V.* v. *Fleming*, 376 Mass. 826, 834-835 (1978), citing *Nishimatsu*

a sophisticated investor, could not reasonably have relied on his verbal and written representations because the PPM stated that the buyer could rely only on the material contained therein. Sarkans also argues that the level of the Fund's Russian investments could not have been material to Eagle's decision to invest.

(a) *Reliance.* Section 410(*a*)(2) of the Uniform Securities Act, G. L. c. 110A, as inserted by St. 1972, c. 694, § 1, provides in pertinent part that

> "[a]ny person who . . . offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him . . . ."

G. L. c. 110A, § 410(*a*)(2), as inserted by St. 1972, c. 694, § 1. Reliance is not an element of a claim under § 410(*a*)(2). *Marram* v. *Kobrick Offshore Fund, Ltd.*, 442 Mass. 43, 53 (2004). To permit a seller of securities to discharge or defeat his statutory obligation of truthfulness to the buyer by attaching an integration clause to the offering materials or subscription agreement would thwart the objective of the statute, namely, the provision of accurate information to the investor and the disclosure of material facts about the security. *Id.* at 51-52, 56-57. Here, the statements in the PPM did not contradict Sarkans'

---

*Constr. Co., Ltd.* v. *Houston Natl. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Marshall, supra* at 671. "[T]he question of a complaint's sufficiency turns on whether it provides enough information to give the defendant notice of what the dispute is about and asserts a right to recovery cognizable on some acceptable legal theory." *Multi Technology, Inc.* v. *Mitchell Mgmt. Sys., Inc.*, 25 Mass. App. Ct. 333, 335 (1988).

Eagle's complaint contained a detailed summary of the factors culminating in its decision to invest in the Fund, and alleged that Eagle reasonably relied on representations by Sarkans and Spring, and that those representations were material to Eagle's decision to invest. Eagle's complaint adequately stated a claim for relief. See *Multi Technology, Inc., supra.* See also *United States* v. *V & E Engr. & Constr. Co.*, 819 F.2d 331, 337 (1st Cir. 1987).

verbal and written representations to Eagle and its investment manager. See *id.* at 56. The PPM simply stated that the Fund invested in emerging markets in countries around the globe. Sarkans' representations that Russia was not one of those markets was entirely consistent with the language of the PPM. See *id.* at 55-56.

In contrast to G. L. c. 110A, § 410(*a*)(2), reasonable reliance is a requirement under § 21.20.010(2) of the Securities Act of Washington, which provides that "[i]t is unlawful for any security, directly or indirectly . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."[9] This provision requires that investors "show that the misrepresentations were material and that they relied on the misrepresentations in connection with the sale of the securities." *Hines* v. *Data Line Sys., Inc.*, 114 Wash. 2d 127, 134 (1990). Sarkans failed to demonstrate that Eagle had no reasonable expectation of proving reasonable reliance. See *O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000). Although the PPM stated that investors should rely only on statements contained therein, under Washington law, a non-reliance provision in a subscription agreement is not necessarily dispositive of a claim of misrepresentation. *Stewart* v. *Estate of Steiner*, 122 Wash. App. 258, 273-274 (2004). Sarkans' signed letter accompanying the PPM stated that "[w]e also sold most of our Russian positions in early 1997"; nothing in the PPM contradicted this assertion. Despite Eagle's sophistication as an investor, Sarkans' enclosed and contemporaneous representation that Fund was not invested in Russia, viewed against the backdrop of Eagle's express statements that it did not want to invest in a fund with Russian exposure, raised a genuine issue of material fact as to the reasonableness of Eagle's reliance. See *ibid.*

(b) *Materiality.* A statement or omission is material if "there

---

[9]Eagle also alleged in its complaint violation of § 21.20.430 of the Securities Act of Washington. Subsection (1) of § 21.20.430 provides: "Any person, who offers or sells a security in violation of any provisions of RCW 21.20. 010 . . . is liable to the person buying the security from him or her . . . ." See *Hoffer* v. *Washington*, 113 Wash. 2d 148, 150 n.1 (1989).

[is] a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Marram,* 442 Mass. at 57-58, quoting from *Craftmatic Sec. Litigation* v. *Kraftsow,* 890 F.2d 628, 641 (3d Cir. 1989). Misrepresentations are not actionable as a matter of law only if they are "so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *Marram, supra,* at 58, quoting from *TSC Indus., Inc.* v. *Northway, Inc.,* 426 U.S. 438, 450 (1976). A fact finder could conclude that information regarding which markets the Fund invested in would be material to a reasonable investor. See *Marram, supra.* Eagle's repeated emphasis on avoiding Russian exposure, and the assurances it required of Spring and Sarkans in this regard, would make untenable a conclusion that such exposure was of little importance.

2. *Default judgment.* Entry of default judgment is a matter of case management. *Greenleaf* v. *Massachusetts Bay Transp. Authy.,* 22 Mass. App. Ct. 426, 429 (1986). Case management is committed to the discretion of the trial judge, and we review the decision for an abuse of discretion. *Ibid.* A judgment "characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice" is an abuse of discretion. *Ibid.* "The consideration to be balanced in deciding a default question for failure to make discovery are, on one hand, a concern about giving parties their day in court, and, on the other, not so blunting the rules that they may be ignored 'with impunity.' " *Id.* at 429-430.

Sarkans argues that the default judgment was an abuse of discretion because (1) the order compelling him to provide handwriting exemplars was vague; (2) Eagle failed to follow established protocols for taking handwriting exemplars; (3) his alleged misconduct did not prejudice Eagle's ability to prosecute its claims; and (4) Eagle exploited his pro se status at the time of the motion.

The default judgment imposed was justified by Sarkans' conduct. See, e.g., *Roxse Homes Ltd. Partnership* v. *Roxse Homes, Inc.,* 399 Mass. 401, 406 (1987); *Greenleaf,* 22 Mass. App. Ct. at 430. Sarkans' failure to provide handwriting

exemplars violated a court order; set against a background of persistent foot dragging, the violation justified imposition of a default judgment. See *Roxse Homes, supra* at 404 (failure to provide court-ordered discovery justified imposition of default judgment).

Vagueness in the scope of the handwriting order and the irrelevance of the documents sought could have been raised in opposition to the discovery motion,[10] but did not justify noncompliance. *Roxse Homes*, 399 Mass. at 406. Sarkans' assertions regarding the handwriting exemplar procedures are unfounded.[11] The absence of prejudice to Eagle due to noncompliance, even if true, did not make the sanction imposed unreasonable. See *ibid.*

Sarkans' failure to provide handwriting exemplars was only one in a series of incidents that demonstrated, in the words of the motion judge, "[Sarkans'] gross disregard and lack of respect for the judicial process." Sarkans had both denied his signature and altered his handwriting, destroyed or refused to provide relevant documents and electronic records, and denied management responsibility for the Fund in the face of overwhelming evidence to the contrary. Given that this conduct culminated in Sarkans' direct violation of a court order, the judge was well within her discretion to impose a default judgment. See, e.g., *Roxse Homes*, 399 Mass. at 406; *Greenleaf*, 22 Mass. App. Ct. at 430.

While we note that Sarkans was acting pro se when he refused to provide the handwriting exemplars, the judge was justified in

---

[10] In fact, Sarkans' counsel raised the issue of relevancy in its opposition to the motion to compel.

[11] Contrary to Sarkans' assertions, Eagle's attorney provided Sarkans with the name of its handwriting expert and offered to produce his resume. The record also refutes Sarkans' contention that Eagle's handwriting expert did not establish a protocol for the taking of the exemplar. Sarkans cites *Harris* v. *Athol-Royalston Regional Sch. Dist. Commn.*, 200 F.R.D. 18 (D. Mass. 2001), a Federal District Court opinion interpreting the Federal Rules of Civil Procedure, for the proposition that Eagle should have had its expert administer the exemplar. *Harris* stands for the proposition that handwriting experts *may not* participate in depositions. *Id.* at 21 ("although [the handwriting expert] may be present at the depositions where handwriting exemplars are to be obtained, she may not participate in the depositions nor may she direct deponents on how to follow her protocol").

concluding that his protestations of ignorance of the law and procedures rang hollow in the face of his deliberate manipulations in this action.

The judgment of the Superior Court is affirmed.

*So ordered.*