Roach, Christine M., J.
This action arises out of an alleged misrepresentation made in connection with sales of interests in a limited partnership hedge fund. The two-count complaint claims violations of G.L. chapter 110A, section 410 (Count I), and chapter 93A (Count II). Both sides have moved for summary judgment: Plaintiffs with respect to Count I (Docket, at Paper 32) and Defendants on both Counts (Docket, at Paper 34). Following hearing February 9, 2012, and a review of all record materials and applicable authority, Plaintiffs’ motion is DENIED, and Defendants’ motion is ALLOWED.
Record Facts
On June 2, 2003, Defendant Daniel J. Barach was invited for drinks and dinner at the home of Plaintiff Jack F. Welch, Jr. in Boston, by Welch’s then-girlfriend, now wife, Suzy Wetlaufer. Barach and Wetlaufer had been in the same class at Harvard Business School in the ‘80s, and Barach was in town for their reunion. At some point during the evening, Wetlaufer asked Barach what he had been doing recently, and the conversation among the three turned to a discussion of the hedge fund Barach operated, Defendant MLT Capital, L.P.
Barach was the principal, and only employee, of Defendant MLT Management LLC, which was the sole general partner of MLT Capital. Barach was the person solely responsible for (a) controlling, managing, and directing all of MLT Capital’s activities, (b) making investment decisions, and (c) soliciting investors in MLT Capital. The strategy of MLT Capital was to focus on investing in companies with recent management-led turnarounds. Upon news of a management change, Barach quickly examined the company’s fi-nancials, and generally also met with the new chief executive officer. From his assessment of the CEO and the turn-around plan, Barach was then well positioned to make an early investment in the rehabilitated company.
MLT Capital had established a good track record as of2003, and Welch was very intrigued with what Welch believed to be Barach’s unique approach to the market. Welch recalls “Barach seemed to have a better mousetrap.” Welch was also impressed that Wetlaufer spoke favorably of Barach as a “smart guy.”
At the time of his social evening with Welch and Wetlaufer, Barach was looking for new investors in MLT Capital, and Welch was an accredited investor. Welch felt Barach had made a “smart presentation” overall, and Welch was also attracted by the relatively low fees charged for the fund. By the end of the evening, Welch said he was interested in making an investment in MLT Capital. Shortly thereafter, Barach gave Welch a Private Placement Memorandum (PPM) for MLT Capital dated November 24, 1997, which Welch reviewed.[1]
On June 27, 2003, Welch signed the fund subscription documents and made an initial investment of $2 million. Welch invested based on three things: “the idea, and the track record that went with it; Daniel Barach and his record at HBS; and the fees.” MLT Capital performed well, and during 2004 Welch twice purchased additional interests in the fund, increasing the amount of his investment to a total of $7 million.[2] By 2007, however, MLT Capital was no longer performing as well as it had historically, and over 2008 the fund suffered severe losses. In December 2008, Barach advised Welch and other limited partners that MLT Capital would shut down.
Welch filed this action approximately six months later, asserting violations of the Uniform Securities Act and the Consumer Protection Act. The claim is that Barach misstated and/or omitted material facts in the 1997 PPM, which made the following statement, in the “Management of the Partnership” section, misleading: “There have been no administrative, civil or criminal actions, whether pending, on appeal, or concluded, against the General Partner or Barach.”[3]
*608 At some point after his investments, Welch learned that a lawsuit had been commenced in 1999 against Barach (and Barach’s wife) by their residential landlords in New York. The record indicates two related proceedings in mid-June 1999 between Eva and Samuel Yasgur, and Monica and Daniel Barach. On June 18, the Yasgurs filed a Petition to Recover Possession of Real Property in the Village Court of Mamaroneck in Westchester County, New York; and on June 21, the Yasgurs filed a Verified Complaint against the Barachs in New York Supreme Court, Westchester County, entitled Yasgur v. Barach, Civil Action Index No. 9639/99. The parties focus their arguments on the latter action. Welch has testified he did not know about these proceedings at the time he made his investments with Barach, and had he known, he would not have made them.
The record reflects the residential landlord-tenant dispute arose out of the landlords’ declining to extend the Barachs’ lease for a few weeks until the Barachs were able to close on a new home. Allegations made by the landlord portrayed Barach as quarrelsome to the point of being hostile.[4] However, there was never a contested hearing in the case. Barach denied the landlords’ allegations, and the case was settled by the parties on terms favorable to the Barachs within a few weeks.[5]
Legal Standards
When parties file cross motions for summary judgment, the court adopts what has been described as a “Janus-like” dual perspective to view the facts for purposes of each motion through the lens most favorable to the nonmoving party. Allstate Ins. Co. v. Occidental Int’l, Inc., 140 F.3d 1, 2 (1st Cir. 1998). Each of the moving parties bears the burden of affirmatively demonstrating the absence of a triable issue and its entitlement to judgment as a matter of law. Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234, 237 (2010). By their filings here, the parties each adamantly maintain no jury trial is required to assess the content and impact of the challenged statement.[6] Count I alleges violation of the Uniform Securities Act, G.L.c. 110A, §410(a)(2), which imposes civil liability for sales of securities by means of fraud or misrepresentation. Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 50 (2004). A plaintiff may prevail on such a claim by establishing that the defendant, in offering or selling a security in Massachusetts, made an untrue statement or omitted to state a material fact, that the plaintiff did not know of the untruth or omission, and that the defendant knew or, in the exercise of reasonable care, would have known of the untruth or omission. Id. at 52.
An omission is material if there is “a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the ‘total mix’ of information made available.” Marram, 442 Mass. at 57-58; Eagle Fund, Ltd. v. Sarkans, 63 Mass.App.Ct. 79, 84-85 (2005). “Misrepresentations are not actionable as a matter of law only if they are ‘so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality.’ ” Eagle Fund, 63 Mass.App.Ct. at 85. Whether a statement or omission is material is determined on an objective basis. Marram, 442 Mass. at 58. In determining materiality, the statement at issue must be read in the context of all the circumstances. Rosen v. Textron, Inc., 321 F.Sup.2d 308, 320 (D.R.I. 2004). The “reasonable investor is neither an ostrich . . . nor a child.” Greenhouse v. MCG Capital Corp., 392 F.3d 650, 656 (4th Cir. 2004). However, both reliance and the plaintiffs sophistication are irrelevant as a matter of law. Marram, 442 Mass. at 53.
Discussion Chapter 110A
First, it is undisputed the statement in the MLT Capital PPM regarding litigation was correct when the PPM was first prepared in November 1997. There is no evidence in the record of any “administrative, civil or criminal actions, whether pending, on appeal, or concluded, against the General Partner or Barach” as of that date. Thus, contrary to one of Welch’s arguments, this is not a “duty to correct” case. The duty to correct “applies when a company makes a historical statement that at the time made, the company believed to be true, but as revealed by subsequently discovered information actually was not.” Stransky v. Cummins Engine Co., 51 F.3d 1329, 1331 (7th Cir. 1995); Gallaher v. Abbott Labs., 269 F.3d 806, 810 (7th Cir. 2001) (statement may be “corrected” only where it was incorrect when made); but cf., In re Burlington Coat Factory Sec. litig., 114 F.3d 1410, 1431 (3d Cir. 1997) (duty to correct can apply to narrow set of forward-looking statements). I find that because the statement in the PPM regarding prior litigation against Barach was not incorrect when made in November 1997, Defendants had no duty to “correct” it.
Rather the question here is whether, in light of the voluntary disclosure in the 1997 PPM that Barach had not been sued, the failure later to disclose the 1999 landlord-tenant action amounted to a material omission. This disclosure duty falls within the contours of “duty to update” jurisprudence. As well recognized by courts, “[t]he duty to update, in contrast to the duty to correct, concerns statements that, although reasonable at the time made, become misleading when viewed in the context of subsequent events.” Burlington Coat Factory, 114 F.3d at 1431, citing cases; but cf. Stransky, 51 F.3d at 1332 n.3 (“No duty to update an historical statement can logically exist”). Accordingly, under the federal securities law, courts have recognized a duty to update, for instance, a registration statement and prospectus for a new issue of securities, so that the documentation is accurate *609 when it is used to sell stock. Gallaher, 269 F.3d at 810-11.[7]
Importantly, however, the duty to update is triggered only by material changes. Id.; Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628, 641 n.17 (3d Cir. 1989), citing Basic, Inc. v. Levinson, 485 U.S. 224, 238 (1988) (“[W]hen defendants voluntarily disclose information, they have a duty to disclose additional material facts only to the extent that the volunteered disclosure was misleading as to a material fact”). The question of whether the Defendants had a duty to disclose the 1999 lawsuit against Barach turns on whether omission of that information was material as a matter of law. Defendants argue the 1999 lawsuit against Barach was so obviously unimportant to a reasonable investor in MLT Capital in 2003 and 2004 that failure to disclose it to Welch was not a material omission. The court is constrained to agree.
Personal allegations in an unadjudicated civil court action, not involving the subject investment or linked to the business experience of the fund or its manager, have been viewed as immaterial to a reasonable investor. Compare GAF Corp. v. Heyman, 724 F.2d 727 (2d Cir. 1983) (intra-family lawsuit against director not material to proxy contest), with Securities & Exchange Comm’n v. Merchant Capital LLC, 483 F.3d 747, 770-71 (11th Cir. 2007) (personal bankruptcy in related business material, where individual’s business experience touted in great detail in offering memorandum). Having surveyed the spectrum of available authority on this question, I find no reasonable investor in Welch’s position would have viewed the brief housing dispute against Barach and his wife as material to the decision whether to purchase interests in MLT Capital.
The parties acknowledge the dearth of case law precisely on point.[8] Nonetheless, the Second Circuit’s decision in GAF serves as a useful guide for assessing the facts of this record. GAF addressed whether the non-disclosure of a family lawsuit against the head of an insurgent board of directors constituted a material omission in the context of a proxy contest. 724 F.2d at 738-43. The director’s sister had claimed a variety of breaches of his fiduciary duties of trust in connection with management of her assets. The court observed such litigation was not necessarily material, and recognized the following factors as probative: the procedural posture of the undisclosed case; the relationship between the parties; the nature of the allegations and the circumstances out of which they arose; and the extent to which the action had been pursued. 724 F.2d at 739-40. The court went on to find the personal litigation too attenuated from the relevant business decision to be material. Id., at 743.
Applying the GAF factors to the record before me underscores the reasons why the civil action against Barach was not material to Welch’s investment decisions. The 1999 action against Barach and his wife was long since concluded by the time Welch considered investing in MLT Capital. The parties to the undisclosed litigation had only a personal, landlord-tenant relationship. The case did not involve MLT Capital, its general partner, or any investment vehicle or financial services entity. And the action was settled quickly by the parties themselves. There is nothing in this record to suggest the performance of Barach on behalf of MLT Capital was linked, in any way or at any time, to the landlord-tenant action. It is undisputed the fund performed well from 1999 through the time Welch invested in 2003 and 2004.
Welch nonetheless argues the 1999 lawsuit was material, because it bore on Barach’s integrity and character. In this respect Welch understandably stresses that Barach “was the fund,” that is, Barach was solely responsible for all MLT Capital’s operation and activities. It is undisputed MLT Capital was a one-man investment operation. Therefore Welch asserts Barach’s “own character was of paramount importance,” because objectively MLT Capital investors were relying on Barach’s acumen and character alone.[9]
I have carefully considered this argument. One problem Defendants duly note is that the cases on which Welch relies arose in the context of the failure to disclose information with a direct bearing on either the value of the investment, or the value of the business of the corporation. See, e.g., Zell v. InterCapital Income Sec., Inc., 675 F.2d 1041, 1045-46 (9th Cir. 1982) (failure to disclose 22 pending lawsuits for violations of state and federal securities laws that exposed company to substantial potential liability because of activities as broker); Siemers v. Wells Fargo & Co., 2007 WL 1140660, at *7-8 (N.D.Cal. 2007) (inadequate disclosure of intentional misappropriation by defendant fiduciary from common fund owned by investors); Ross v. Warner, 1980 WL 1474, at *2 (S.D.N.Y. 1980) (non-disclosure of substantial improper payments to officials of foreign companies was pertinent to integrity of defendant company’s management). As already noted, Barach’s litigation did not arise in connection with his responsibility for the fund’s operations and activities, and in no way affected the value of investments in MLT Capital. And, nothing in the record suggests that the decline of MLT Capital was in any way related to Barach’s integrity or character.[10]
A second problem with the so-called “integrity” argument is that it threatens to swallow the black letter rule that courts considering materiality must weigh and assess the “total mix” of information made available to investors. On the one hand, it is clear that non-economic factors can be material under appropriate circumstances. SEC v. Jakubowski, 1997 WL 156544, at *7-8 (fact-specific inquiry focused on what the reasonable investor would find significant); Siemers v. Wells Fargo & Co., 2007 WL 1140660 at *8 (N.D.Cal. April 17, 2007) (“The integrity of manage *610 ment is always of importance to investors”); Ross v. Warner, 1980 WL 1474 at *8 (S.D.N.Y. Dec. 11, 1980) (“The company’s practices were pertinent to the integrity of management”). However, the notion that anyone who “lies” — about anything — in a document related to sale of securities, or whose judgment in his personal life is called into question, cannot be trusted to handle other people’s money, is simply not the law. Greenhouse, 392 F.3d at 660 (law does not permit theory under which “almost any misrepresentation by a CEO— including . . . marital fidelity, political persuasion, or golf handicap . . . could . . . serve as basis for . . . securities fraud”) (emphasis in original). Having considered the personal integrity argument, I nonetheless rule the omission of the landlord-tenant dispute here not material as a matter of law.[11]
Chapter 93A
To support Count II of his complaint alleging violations of General Laws c. 93A, Welch relies on the same operative facts. Welch claims Barach’s failure to update the PPM resulted in false statements regarding the existence of prior litigation, which were material to Welch’s decision to invest in the fund. The parties agree the substance of inquiry on the issue of materiality is the same for this claim. Because I find and rule the failure to disclose the 1999 litigation against Barach was not material as a matter of law, summary judgment dismissing Count II is also appropriate.[12]
Conclusion
For all the reasons stated, Plaintiff John F. Welch, Jr.’s Motion for Summaiy Judgment (Docket, at Paper 32) is DENIED, and Defendants’ Motion for Summary Judgment (Docket, at Paper 34) is ALLOWED. The Complaint is DISMISSED with prejudice.

Barach made handwritten changes to the 1997 PPM, with respect to both the minimum investment amount and to MLT Capital’s listed attorney, before providing it to Welch.

Welch testified at deposition he was satisfied with that level of investment, and declined to increase his investment further in 2005 when he received an amended PPM. In all respects material to this action the 2005 PPM was identical to the 1997 PPM.

Nbe PPM also plainly stated: “THE INFORMATION CONTAINED HEREIN IS GIVEN AS OF THE DATE HEREOF [November 24, 1997] AND THIS MEMORANDUM DOES NOT PURPORT TO GIVE INFORMATION AS OF ANY OTHER DATE,” and “THIS MEMORANDUM DOES NOT. . . OMIT. . . A MATERIAL FACT NECESSARY TO MAKE THE STATEMENTS MADE, IN LIGHT OF THE CIRCUMSTANCES IN WHICH THEY WERE MADE, NOT MISLEADING.” (Emphasis in original.)

In a sworn affidavit filed with the verified complaint, Eva Yasgur claimed Barach stated he was “going to damage the house in ways that are not immediately obvious," that he was “going make it so that you can’t rent the house,” that he was “a really vindictive person,” and that he was “going to make things really hard for you.” At or around the time they filed the case, the landlords obtained an ex parte order to show cause and temporarily to restrain the Barachs.

Under the terms of the parties’ July 1999 stipulation of settlement, the Barachs were permitted to remain in the house for the additional three weeks at a rental rate lower than that contained in the original lease.

While reasonableness is ordinarily a jury question, I am persuaded by the parties’ arguments and authority that the circumstances of this case present one of those occasions where the factual record is complete, credibility is not at issue, and the court may determine the mixed question of law and fact of materiality. Marram, 442 Mass. 43, 57-58; TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 450 (1976); Cooperman v. Individual, Inc., 171 F.3d 43, 49 (1st Cir. 1990).

Our statute must be interpreted “in coordination with” the federal act. Marram, 442 Mass. at 50.

For cases finding no materiality, see, Greenhouse v. MCG Capital Corp., 392 F.3d 650 (4th Cir. 2004) (CEO’s misrepresentation of educational background immaterial in context of disclosures about experience and financial performance); Hutchinson v. CBRE Realty Finance, Inc., 638 F.Sup.2d 265, 277 (D.Conn. 2009) (failure to disclose debtor’s distress not material where company not at risk). For materiality, compare In re Fuwei Films Securities Litigation, 634 F.Sup.2d 419, 444 (S.D.N.Y. 2009) (pending investigation re acquisition of key product line material; arbitration seeking two per cent of assets not material); New Equity Sec. Holders Committee for Golden Gulf, Ltd, v. Phülips, 97 B.R. 492, 497 (E.D.Ark. 1989) (misrepresentation of business degree immaterial; vice-president’s guilty plea for tax-related offense, litigation and investigation against company, all material).

Despite the objective nature of the test, Welch has testified about his own subjective decision to invest. In addition to the material cited above, Welch testified that Barach’s integrity and character were key. Welch testified he based his investment decision on the fact that Wetlaufer had spoken well of Barach, but also on the representation made in the PPM that Barach had not been sued. And, Welch testified he never would have invested in MLT Capital had he known of the allegation that Barach had made statements threatening to damage the Yasgurs’ rental house. This subjective proffer is of limited value for a number of obvious reasons.

Although “the misrepresentation or omission . . . need not be the cause of any loss,” Marram, 442 Mass. at 57. n.3, “materiality has an element of causation built in, because a statement is ‘material’ only if it so alters the ”total mix’ . . . that it has the potential to affect the [investment] decision." Jakubowski, 1997 WL. at *7.

 I have also considered, but must reject, the argument that by making reference to the subject of litigation in the original PPM, Barach conceded (or “established”) materiality as a matter of law. Welch’s cited authority on this issue is readily distinguishable. Ansin v. River Oaks Furniture, Inc., 105 F.3d 745, 754 (1st Cir. 1997) (failure to disclose forthcoming IPO); Zell v. Intercapital Income Securities, Inc., 675 F.2d 1041, 1046 (9th Cir. 1982) (proxy statements contained representations vouching for fund managers); In re Elmer Perkins, Inc., Securities Lit, 286 F.Sup.2d 46, 53-54 (D.Mass. 2003) (public press releases touted performance of products).

Where a Chapter 93A claim is derived solely from the same operative facts as other failed common-law and statutory claims, it cannot stand. Macoviak v. Chase Home Mortg. Corp., 40 Mass.App.Ct. 755, 760 (1996); Lily Transp. Corp. v. Royal Inst. Servs., Inc., 64 Mass.App.Ct. 179, 204-05 & n.14 (2005) (Laurence & Green, JJ., concurring in part and dissenting in part), collecting cases.