NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-416

THE FIRST CHURCH OF CHRIST, SCIENTIST

vs.

BARBARA ANN CHARDER.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The First Church of Christ, Scientist (Church) holds the remainder interest in a bungalow-style, two-story home on Fair Street in Nantucket (the property). The defendant has held a life estate in the property since 2003. Alleging waste, the Church commenced this action seeking (i) to terminate the defendant's life estate in the property pursuant to G. L. c. 242, § 1,[2] (ii) to recover damages caused by waste, and (iii) a declaration terminating the defendant's life estate and vesting title in fee simple in the Church. On the Church's second motion for sanctions for failure to comply with rules of

---

[1] Now known as Ara Charder.
[2] General Laws c. 242, § 1, provides that "If a tenant . . . for life . . . commits or suffers waste on the land so held, the person having the next immediate estate . . . may have an action of waste against such tenant to recover the place wasted and the amount of the damage . . . ."

discovery and with court orders compelling compliance, a judge of the Superior Court entered final judgment terminating the defendant's life estate, and granting all right, title, interest, and possession to the Church.[3]  On appeal, the defendant argues that the sanction of default was too severe, and that the facts alleged in the complaint did not warrant a judgment in the Church's favor.  We affirm.

Background.  The Church commenced this action on September 11, 2019, and the defendant filed a timely answer.  On April 7, 2020, the Church filed a motion to compel discovery.  The defendant's attorney sought and was granted leave to withdraw; and the Church was ordered to serve the discovery on the defendant, personally.  The Church did so.  On August 3, 2020, having received no discovery, the Church filed a second motion to compel discovery.  A judge ordered the defendant to comply on or before September 4, 2020.  On January 12, 2021, the Church filed a motion for sanctions due to the defendant's failure to comply with the court order by September 4, 2020.  On January 20, 2021, the judge found that sanctions were warranted but deferred "making any finding as to sanctions" at that time.  The judge thereafter extended the deadline for the defendant to file a motion for summary judgment.

---

[3] Count II, seeking damages due to waste, was dismissed.

The summary judgment record demonstrated that the local board of health had communicated with the Church on October 31, 2011, indicating it had received complaints about rodents at the property and that the occupant had refused access for an inspection. The Church engaged an expert architect who evaluated the exterior of the building on May 8, 2019. He observed: rotted and non-functional gutters that had allowed water damage to exterior walls; wet rot negatively impacting the integrity of the wood; a sagging roof near the main entry, bowed wall, and distressed windows, all indicating that the structural integrity of framing had failed; the roof needed to be replaced; rotting wood on south façade was allowing water to infiltrate behind the siding or to the interior; the integrity of the siding, windows, roof, and exterior walls were compromised; the glass of one window was broken; moss, lichen or algae were growing on cedar shingles; four square feet of shingles were missing; storm windows were partially detached; there was missing split flashing above five windows; there were missing components and exposed wires on the front light; the front door was barricaded with plywood; debris littered a rear deck; and, finally, the yard was unkempt, overgrown, and scattered with debris. The architect concluded that the property had not been reasonably or properly maintained for several years, the neglect had allowed "severe and substantial deterioration to occur," and

3

further opined that the overall condition was that of an unoccupied residence that had not been reasonably maintained and that the home likely was uninhabitable with compromised integrity of the siding, windows, roof, and exterior walls.

In the course of the summary judgment proceedings, the judge granted the Church's motion to strike evidence in opposition to the summary judgment motion, noting that the defendant had failed to answer the Church's discovery requests concerning the condition of the property at various intervals, its maintenance over the years, and the basis for any facts supporting her position that (1) the property has not deteriorated substantially since she acquired title in 2003, and (2) she has not failed in her duty to preserve the property for the benefit of the Church. The judge ultimately denied summary judgment, however, on the basis that the Church's expert did not opine on the condition of the building's interior or estimate the costs of repair.

Following that decision, a different judge conducted a Rule 16 hearing on September 27, 2021, which the defendant and her new attorney attended. At that hearing, the parties agreed to a date, October 15, 2021, for the Church's expert to conduct an inspection of the interior.[4] The judge stated that "the

---

[4] The Church's expert would have been unavailable for an extended period of time after October 2021, and so offered several dates

4

inspection will go forward on the . . . 15th.  Ms. Charder is, of course, welcome to attend.  I do agree, though, that it is not necessary that she attend, and I would expect that the inspection would go forward whether she is able to make herself available or not."  The judge noted that "the ultimate sanction for failure to comply with discovery is judgment for the opposing side, so I think it's important that this go forward as scheduled."[5]

Beginning the day before the scheduled inspection, the defendant made efforts to change the time of the inspection from 11 $\underline{\text{A}}$.$\underline{\text{M}}$. to between 9 $\underline{\text{A}}$.$\underline{\text{M}}$. and 9:30 $\underline{\text{A}}$.$\underline{\text{M}}$.  Due to ferry schedules and other traveling challenges, the Church's counsel declined to change the time.  The defendant also informed the Church that she refused to allow more than one person into the building and refused to allow the Church's attorney to enter the building. Counsel for the Church and three others (the original architect, the architect's co-worker, and a consultant on costs of repairs)

---

in October for the inspection.  The defendant claimed that she would be busy with her charter bus tour business in October and suggested that the Church get a new expert in order to schedule a later inspection.  Noting that the defendant's personal presence was not required, the court ordered the defendant to choose from among the October dates offered; she agreed to October 15, 2021.

[5] In addition, the judge issued a written order that inspection by the plaintiff's expert will go forward on October 15, 2021, with or without the defendant's presence, and also provided dates for any renewed motion for summary judgment, mediation, a final pretrial conference, and a trial date.

arrived at the property at 11 A.M. and found the building locked. The defendant had filed an emergency motion for a protective order seeking to limit entry to one person and prevent counsel for the Church, the architect's co-worker, and the consultant from accompanying the architect into the building. The judge denied the motion and specifically stated that "[t]he architect, his associate or associates, and plaintiff's counsel may enter the premises to inspect it."

Counsel for the Church thereafter demanded immediate access and returned to the property around 2 P.M. The defendant did not appear; counsel for the Church traveled to her home and saw her tour van in the driveway and the defendant sitting in a lawn chair in the yard, using a smart phone. A few minutes later, the defendant's counsel called and told the Church's counsel that the defendant was busy providing a tour and would not allow the inspection until 4:30 P.M. After continuing conversations between counsel indicated that the defendant would not permit an inspection until 4:30 P.M., counsel for the Church and the Church's experts departed from the property and left the island.

The Church filed a renewed motion for summary judgment and a motion for sanctions. The Church detailed what it characterized as the defendant's willful and repeated defiance of court orders compelling discovery despite being warned by the judge that sanctions for not cooperating with the October 15,

6

2021 property inspection could include entry of judgment. In addition, the Church argued that the defendant had lied that she lived at the property from 2003-2017 because records indicated that there had been no water service at the property since November 5, 2014, and that she lied about being unavailable before 4:30 P.M. on October 15.

The judge granted the motion for sanctions "for substantially the reasons set forth in the plaintiff's memorandum in support of its motion," and entered judgment against the defendant pursuant to Mass. R. Civ. P. 37 (b) (2) (C), as amended, 390 Mass. 1208 (1984), terminating the defendant's life estate and awarding all right, title, interest and possession of the property to the Church.[6]

Discussion. Entry of a default judgment is "committed to the sound discretion of the trial judge," and "[w]e do not consider that discretion abused unless its exercise has been characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice." Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass. App. Ct. 426, 429 (1986). "The consideration to be balanced in deciding a default question for failure to make discovery are, on one hand, a concern about giving parties their day in court, and, on

_____

[6] The judge also dismissed count II for damages, but the Church does not appeal.

7

the other, not so blunting the rules that they may be ignored 'with impunity'" (citations omitted). Id. at 429-430. "Among the pertinent considerations in determining whether conduct warrants dismissal are 'the severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness vel non of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions.'" Sommer v. Maharaj, 451 Mass. 615, 621 (2008), quoting Robson v. Hallenbeck, 81 F.3d 1, 2 (1st Cir. 1996).

The defendant argues that the sanction of default was too severe and the judge should have considered lesser sanctions. The record shows, however, that the defendant repeatedly flouted discovery requests and related court orders. As for the inspection, she offered no legitimate excuse, and even if the Rule 16 order was vague regarding the number of persons that could enter the house for inspection, any doubt was resolved by the denial of the defendant's motion for a protective order by 2 P.M. on October 15. Yet, the defendant continued to deny entry. In addition, the court had warned the defendant that judgment could enter should she fail to cooperate with the home inspection. We conclude that "[t]he ultimate sanction imposed was amply justified in the circumstances." Roxse Homes Ltd. Partnership v. Roxse Homes, Inc., 399 Mass. 401, 406 (1987)

(noncompliance in clear violation of court orders justified ultimate sanction). See Eagle Fund, Ltd. v. Sarkans, 63 Mass. App. Ct. 79, 85-86 (2005) (defendant's violation of court order after persistent foot dragging justified imposition of default judgment). There was no abuse of discretion.

To the extent a finding of willfulness is required, but see Keene v. Brigham & Women's Hosp., Inc., 439 Mass. 223, 235-236 (2003) (such finding only "generally" required), the Church argued in its memorandum that the defendant's conduct was willful. The judge's decision adopting the memorandum implicitly made a finding of willfulness, which was more than justified by the evidence. See Gos v. Brownstein, 403 Mass. 252, 257 (1988) (finding of willfulness necessary unless "implicit and warranted"). In addition, absence of prejudice, which is not clearly shown here given the state of the property, "even if true, did not make the sanction imposed unreasonable." Eagle Fund, Ltd., 63 Mass. App. Ct. at 86.[7]

---

[7] At oral argument, but not in her brief, the defendant argued that the judge, in granting the Church's motion for sanctions "substantially for the reasons set forth in the plaintiff's memorandum in support of its motion," did not adopt all of the arguments in the memorandum. We need not address arguments not made in the brief, Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), but if the judge had rejected a material argument in the memorandum, he no doubt would have said so.

The defendant also contends that the complaint does not contain sufficient facts to support a finding of waste -- that it does not state a claim for relief. See Productor e Importadora de Papel, S.A. de C.V. v. Fleming, 376 Mass. 826, 834-835 (1978) ("even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law" [citation omitted]). The defendant contends that the fact that the judge denied summary judgment demonstrates that the complaint failed to state a claim. We disagree.

"Waste has been defined as an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in its substantial injury" (quotation and citation omitted). Matteson v. Walsh, 79 Mass. App. Ct. 402, 405 (2011). Here, the complaint detailed the condition of the exterior of the property as set forth above, and alleged that "[a] substantial deterioration of the [p]roperty occurred as a result of [the defendant's] neglect of the [p]roperty, amounting to waste and injuring the remainder interest of the Church," and that "[t]he waste committed or allowed by [the defendant] was an unreasonable or improper use, abuse, mismanagement, or omission

10

of duty touching the [p]roperty."  The Church alleged sufficient facts to allow the court to enter a judgment for waste.[8]

Judgment affirmed.

By the Court (Sacks, Singh & Brennan, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  March 10, 2023.

---

[8] The earlier denial of the Church's summary judgment motion was based not on the complaint's failure to allege sufficient facts or otherwise to state a claim but instead on the lack of record evidence regarding the building's interior and the cost of repairs, i.e., damages.  Neither of these issues was an obstacle to the entry of the judgment here, which, notably, dismissed the Church's claim for damages.

[9] The panelists are listed in order of seniority.